CUNNINGHAM ET AL., APPELLEES, *v.* TESTA, TAX COMMR., APPELLANT.

[Cite as *Cunningham v. Testa*, 144 Ohio St.3d 40, 2015-Ohio-2744.]

(No. 2014–0532—Submitted March 10, 2015—Decided July 8, 2015.)

PFEIFER, J.

{¶ 1} The issue in this case is whether a taxpayer's explicit claim under R.C. 5747.24(B)(1) to be domiciled outside Ohio binds the tax commissioner without regard to other statements and actions by the taxpayer that indicate a domicile inside Ohio. We conclude that a taxpayer's statement does not bind the tax commissioner and reverse the decision of the Board of Tax Appeals.

BACKGROUND

{¶ 2} Appellee Kent Cunningham filed an "Affidavit of Non–Ohio Domicile" for tax year 2008 in March 2009, using the form prescribed by the tax commissioner. Cunningham filled in his name, social security number, and Cincinnati address. Cunningham declared under penalties of perjury that he "was not domiciled in Ohio at any time during taxable year 2008" and that he was domiciled in Tennessee. Cunningham did not identify his out-of-state abode. He stated that he would not be filing an Ohio individual income tax return for 2008 and affirmed that he "had fewer than 183 contact periods in Ohio during the taxable year." Under former R.C. 5747.24(B)(1), a person is presumed not to be domiciled in Ohio if, among other things, he has had no more than 182 "contact periods" in this state during a taxable year. Sub.H.B. No. 73, 151 Ohio Laws, Part V, 9444, 9463. Cunningham signed and dated the form. Appellee Sue Cunningham (Kent's wife) did not file such an affidavit for tax year 2008.

{¶ 3} Neither of the Cunninghams filed an Ohio income tax return for 2008. They jointly filed a federal tax return using Form 1040, which listed their Cincinnati address as their home address.

{¶ 4} The tax commissioner issued first a notice, then an assessment, based upon the nonfiling and nonpayment of Ohio income tax. The tax commissioner assessed tax owed ($6,597.75), preassessment interest ($318.85), and a penalty ($2,309.21), for a total assessment of $9,225.81.

{¶ 5} The Cunninghams filed a petition for reassessment. After additional correspondence, the tax commissioner issued his final determination, in which he discussed R.C. 5747.24 and common-law domicile. The commissioner found that "the petitioners owned residential property in Tennessee for the entire year in question." The commissioner noted the January 24, 2008 filing of an Ohio homestead-exemption application, with its declarations under penalty of perjury that the Cincinnati house was their principal place of residence and that the Tennessee house was a second or vacation home. The commissioner found that "[t]his document suggests that the petitioners were residents for at least some portion of 2008 and that the petitioners did not intend to abandon their Ohio domicile." The commissioner considered the Tennessee utility bills submitted by the Cunninghams, but noted that they were sent to the Cincinnati address. This fact was found to be further evidence that the Cunninghams did not intend to remain in Tennessee or abandon their Ohio abode.

{¶ 6} Thereafter, the commissioner considered the Affidavit of Non–Ohio Domicile, which was filed after the homestead-exemption application, and found that "[t]his sworn statement contradicts the petitioners' prior sworn statement that they occupied, as their principal place of residence, their home in Cincinnati, and that the Tennessee home was either a second home or a vacation home." Because of "contradictory statements made by the petitioners, the Tax Commissioner necessarily concludes that the petitioners' Affidavit of Non–Ohio Domicile contains a false statement as described in R.C. 5747.24(B)(1)."

{¶ 7} The commissioner's determination stated that "the petitioners provided no evidence of their contact periods with Ohio, other than as sworn on the statement." As a consequence of these findings, the commissioner concluded that "the petitioners are not irrebuttably presumed under R.C. 5747.24(B) to be domiciled outside of Ohio." The consequence is that the "the petitioners are presumed to be domiciled in Ohio for the entire taxable year under R.C. 5747.24(C)." See R.C. 5747.24(B)(1) (if "the individual fails to file the statement as required or makes a false statement, the individual is presumed under division (C) of this section to have been domiciled in this state the entire taxable year"). The commissioner concluded that the Cunninghams failed to rebut the presumption of Ohio domicile.

{¶ 8} The Cunninghams appealed to the BTA. The BTA found that Kent had filed the domicile affidavit under R.C. 5747.24(B). The BTA also found that because Sue had not filed a domicile affidavit, she was unable to claim the

irrebuttable presumption and that regardless of the number of contact periods, the totality of the evidence established that she had an Ohio domicile under common-law principles. BTA No. 2011–4641, 2014 WL 1155688, *3–4 (Mar. 6, 2014). The BTA held that because " 'domicile' is a legal concept defined for individual income tax purposes by R.C. 5747.24," a "taxpayer may lose the irrebuttable presumption of non-Ohio domicile only if making a false statement regarding (1) contact periods, or (2) having an abode outside Ohio." *Id.* at *3. According to the BTA, Kent Cunningham had "complied with the requirements of R.C. 5747.24(B)(1)" and was, therefore, "irrebuttably presumed to be not domiciled in Ohio for Ohio individual income tax purposes." *Id.* The BTA reversed the commissioner's determination with regard to Kent Cunningham, and the tax commissioner has appealed.

ANALYSIS

*Income tax and domicile*

{¶ 9} Ohio's income tax is levied "on every individual * * * residing in or earning or receiving income in this state." R.C. 5747.02(A). "Resident" is defined as an "individual who is domiciled in this state, subject to section 5747.24 of the Revised Code." R.C. 5747.01(I)(1). "Nonresident" is defined as "an individual * * * that is not a resident." R.C. 5747.01(J).

{¶ 10} Residents generally pay tax on all of their Ohio adjusted gross income, R.C. 5747.02(A), subject to reduction by a "resident credit" designed to prevent double taxation when an Ohioan has been subject to tax on the same income in another state. R.C. 5747.05(B); *see Brachman v. Limbach*, 52 Ohio St.3d 1, 2, 556 N.E.2d 146 (1990). A nonresident pays tax only on the portion of his income that is earned or received in Ohio. *See* R.C. 5747.01(A) (income tax "is hereby levied on every individual * * * residing in or earning or receiving income in this state").

{¶ 11} During the many years that the Cunninghams earned their income in Ohio from business and employment activities before their retirement, that income would have been taxable by Ohio regardless of their state of domicile. But by 2008 both had retired, and their income no longer consisted of wages or business income but was derived from sources such as pensions, interest, dividends, and IRA distributions, the allocation of which depends solely on where they are domiciled. *See* R.C. 5747.20(B)(2)(c) (income from disposition of intangible property "allocable to this state if the taxpayer's domicile was in this state at the time of such sale or other transfer"); 5747.20(B)(6) (any item of income or deduction included in the computation of the taxpayer's adjusted gross income that is not otherwise specifically allocated, including interest, dividends, and distributions, and IRA income, "shall not be allocated to this state unless the

taxpayer's domicile was in this state at the time such income was paid or accrued"). Thus, the issues of domicile and residence are dispositive with respect to whether Kent Cunningham's 2008 income should be taxed by Ohio.

### Common-law domicile

{¶ 12} We recently stated that "domicile is 'the technically pre-eminent head-quarters that every person is compelled to have in order that certain rights and duties that have been attached to it by the law may be determined.' " *Schill v. Cincinnati Ins. Co.*, 141 Ohio St.3d 382, 2014-Ohio-4527, 24 N.E.3d 1138, ¶ 24, quoting *Williamson v. Osenton*, 232 U.S. 619, 625, 34 S.Ct. 442, 58 L.Ed. 758 (1914). In the tax context, the BTA has observed that although "the terms 'resident' and 'domicile' are frequently used interchangeably, * * * they in fact are distinctly different, albeit related, concepts." *Davis v. Limbach*, BTA No. 89–C–267, 1992 WL 275694, *4 (Sept. 25, 1992). Domicile "is generally defined as a legal relationship between a person and a particular place which contemplates two factors: first, residence, at least for some period of time and, second, the intent to reside in that place permanently or at least indefinitely." *Id.*; *accord Schill*, ¶ 25. At common law, "the issue of domicile is one of intent determined by the facts of the individual case," including "the acts and declarations of the person" and the totality of "accompanying circumstances." *Davis* at *4, citing *State ex rel. Kaplan v. Kuhn*, 8 Ohio N.P. 197, 202, 11 Ohio Dec. 321 (1901). *See Cleveland v. Surella*, 61 Ohio App.3d 302, 305–306, 572 N.E.2d 763 (8th Dist.1989) ("[e]videntiary factors" include "filing federal income tax returns, voting, automobile registration or location of spouse and children").

{¶ 13} We have held that "for a change in domicile to be established, the person must have a physical presence in the new residence and intend to stay there." *Schill*, ¶ 26, quoting *Williamson* at 624. Moreover, " '[t]he essential fact that raises a change of abode to a change of domicile is the absence of any intention to live elsewhere * * *.' " *Id.*, quoting *Williamson* at 624. *See E. Cleveland v. Landingham*, 97 Ohio App.3d 385, 390, 646 N.E.2d 897 (8th Dist.1994) ("no one loses his old domicile until a new one is acquired").

{¶ 14} The Cunninghams state in their brief that they were both "common law domiciliaries of Ohio during the 2008 tax year." This concession is supported by various facts, including that Kent and Sue were both born, raised, and educated in Ohio; that they were married in Ohio; that they have lived in Ohio throughout their entire marriage up to the time of the BTA hearing in 2012 (except for several years in the 1970s); that their mail was generally delivered to their Cincinnati home and not forwarded to the Tennessee address; that they have lived in the Cincinnati area and raised a family there in three houses, including the home that they currently own in Indian Hill; and that they held Ohio driver's

licenses and voted in Ohio in 2008, the tax year at issue. *See generally In re Hutson's Estate*, 165 Ohio St. 115, 133 N.E.2d 347 (1956).

### The "bright-line statute," R.C. 5747.24

{¶ 15} In 1993, the General Assembly enacted R.C. 5747.24, which we will refer to as the "bright-line" statute. S.B. No. 123, 145 Ohio Laws, Part I, 1113, 1120–1122. The bright-line statute "sets forth certain presumptions regarding an individual's domicile" for tax purposes. *Tyson v. Zaino*, BTA No. 2001–B–1327, 2003 WL 22294864, *4 (Oct. 3, 2003). Those presumptions depend on two circumstances: having an "abode" or place of residence outside Ohio during the entire taxable year and having no more than a certain number of "contact periods in this state" during the taxable year. R.C. 5747.24(B)(1).

{¶ 16} Pursuant to R.C. 5747.24(A)(1), a "contact period in this state" is defined in terms of two elements. The taxpayer satisfies the first element by being away, overnight, from an "abode" (a place of residence) of the taxpayer that is located outside Ohio. The second is satisfied if the taxpayer, while away overnight from the non-Ohio abode, spends a portion of each of two consecutive days in Ohio, however minimal the portion of each day might be. As a general matter, this can be characterized as an "overnight" test, where the overnight stay need not be in Ohio, but probably would be in most instances.

{¶ 17} In 2006, the legislature amended the bright-line statute, creating a presumption of non-Ohio domicile for a taxpayer with 182 or fewer contact periods in Ohio. 151 Ohio Laws, Part V, 9463 (amending R.C. 5747.24(B)(1)). The presumption is irrebuttable unless the taxpayer fails to timely file a statement verifying that he was not domiciled in Ohio and he had at least one abode outside Ohio, both during the entire taxable year. The statement must identify the abode(s). The statement is rebuttable if it contains a "false statement."

{¶ 18} It is well settled that " 'the general assembly will not be presumed to have intended to abrogate a settled rule of the common law unless the language used in a statute clearly supports such intention.' " *Mandelbaum v. Mandelbaum*, 121 Ohio St.3d 433, 2009-Ohio-1222, 905 N.E.2d 172, ¶ 29, quoting *State ex rel. Hunt v. Fronizer*, 77 Ohio St. 7, 16, 82 N.E. 518 (1907). *See also Carrel v. Allied Prods. Corp.*, 78 Ohio St.3d 284, 287, 677 N.E.2d 795 (1997); *Ohio Bell Tel. Co. v. Antonelli*, 29 Ohio St.3d 9, 10–11, 504 N.E.2d 717 (1987). Although the bright-line statute creates an irrebuttable presumption, it does not affect the substantive law of domicile. *See Maple v. Tracy*, BTA Nos. 98–T–268 and 98–T–312, 1999 WL 706543, *3 (Sept. 3, 1999) ("While R.C. 5747.24 has set forth certain presumptions and burdens with respect to domicile, it has not altered the basic concept of what constitutes a domicile"); *Tyson*, BTA No. 2001–B–1327, 2003 WL 22294864, *6 (quoting *Maple*).

{¶ 19} Moreover, by clear implication, R.C. 5747.24 incorporates the common law of domicile and preserves it. A taxpayer who does not enjoy the irrebuttable presumption against Ohio domicile under R.C. 5747.24(B) is presumed to be domiciled in Ohio and bears the burden of rebutting that presumption. *See* R.C. 5747.24(C) and (D). To do so involves proving the substantive elements of domicile under the common law. *See Schill*, 141 Ohio St.3d 382, 2014-Ohio-4527, 24 N.E.3d 1138, ¶ 35–37 (outlining the facts in the taxpayer's testimony that would rebut a presumption against a Florida domicile under R.C. 5747.24).

{¶ 20} At the time pertinent to this appeal, R.C. 5747.24(B)(1) under the 2006 amendment stated:

> [A]n individual who during a taxable year has no more than one hundred eight-two contact periods in this state, which need not be consecutive, and who during the entire taxable year has at least one abode outside this state, is presumed to be not domiciled in this state during the taxable year if [within a prescribed time], the individual files with the tax commissioner, on the form prescribed by the commissioner, a statement from the individual verifying that the individual was not domiciled in this state under this division during the taxable year.
>
> * * *
>
> The presumption that the individual was not domiciled in this state is irrebuttable unless the individual fails to timely file the statement as required or makes a false statement. If the individual fails to file the statement as required or makes a false statement, the individual is presumed under division (C) of this section to have been domiciled in this state the entire taxable year.

151 Ohio Laws, Part V, 9463.

{¶ 21} The Cunninghams argue that R.C. 5747.24(B)(1) abrogated the common-law principles of domicile. They argue that the General Assembly did not intend to permit a finding that a taxpayer filed a "false statement" merely because other evidence shows that the taxpayer meets the common-law criteria for domicile. Rather, they claim, the statement required under R.C. 5747.24(B) is false only if the taxpayer does not meet the *statutory* requirements for the irrebuttable presumption of a non-Ohio domicile. They contend that the description of the statement as verifying that the individual was not domiciled in Ohio "under this division" bolsters their conclusion. We disagree.

{¶ 22} The statute is not as narrow as the Cunninghams claim. A statement verifying non-Ohio domicile can be false if it is not supported by the common law

of domicile. That the taxpayer must "verify" domicile status militates strongly against the argument that the underlying common-law facts of domicile do not matter. In a legal context, "verify" usually means either presenting evidence of a provable fact or stating a matter as being fact under oath. *See Black's Law Dictionary* 1793 (10th Ed.2014). If the common law does not matter, as the Cunninghams assert and as the BTA held, then the statutory requirement that the individual "verify" non-Ohio domicile would be rendered meaningless.

{¶ 23} R.C. 5747.24(B)(1) states that when an individual satisfies the contact-period test and has an abode outside Ohio, the individual

> is presumed to be not domiciled in this state during the taxable year if, on or before the fifteenth day of the fourth month following the close of the taxable year [i.e., April 15 of the following year for calendar-year taxpayers], the individual files with the tax commissioner, on the form prescribed by the commissioner, a statement from the individual verifying that the individual was not domiciled in this state under this division during the taxable year.

{¶ 24} There is no factual dispute concerning the two crucial elements under R.C. 5747.24(B)(1). The record extensively documents that the Cunninghams owned a house in Tennessee throughout 2008, which would constitute an "abode outside this state." Moreover, the Cunninghams presented uncontroverted evidence that they had 182 or fewer contact periods during 2008. According to the Cunninghams, this should end the matter. They argue that the statute requires nothing more than verifying the separate and discrete facts of the number of contact periods and an abode outside Ohio. We disagree for two reasons.

{¶ 25} First, division (B) distinguishes verification of domicile from verification of contact periods and abode; it does not conflate them. The domicile statement itself asks for a declaration not only of contact periods and an abode outside Ohio. It also asks, on a separate line, for a declaration that the individual was not domiciled in Ohio during the tax year in question and for an identification of where the individual claims to have been domiciled during that year. It follows that verifying domicile is not the same as verifying the two statutory criteria.

{¶ 26} Second, division (B)(1) states that the taxpayer statement must verify two things: (1) that "[d]uring the entire taxable year, the individual was not domiciled in this state" and (2) that "[d]uring the entire taxable year, the individual had at least one abode outside this state [whose location must be identified]." R.C. 5747.24(B)(1)(a) and (b). When the statute sets forth these precise requirements for the statement, it does not limit the concept of domicile to domicile "under this division." Because of this, we conclude that the Cunning-

hams place unwarranted emphasis on the use of the phrase elsewhere in the statute.

*False statement under R.C. 5747.24(B)(1)*

{¶ 27} The tax commissioner found that Kent Cunningham's verification of non-Ohio domicile was false in light of a contradictory statement, which had been made under penalties of perjury and with the purpose of obtaining the property-tax benefit of the homestead exemption for his Cincinnati home. The BTA disagreed, concluding, as the Cunninghams argue, that the statute permits a finding of falsity only for a false statement pertaining to contact periods and abode. As discussed above, we disagree. We hold that the tax commissioner stated a substantial basis for the false-statement finding: the contradictory application for the homestead exemption.

{¶ 28} The homestead-exemption application was dated January 24, 2008. It claimed the tax break both for the current year 2008 and as a belated application for 2007. It identified Sue Cunningham as the applicant. She identified herself as a "disabled person" as the basis for claiming the exemption. The application also identified Kent as the spouse of the applicant, the Cincinnati house as the home address, and the Tennessee home as "a second or vacation home." Both Sue and Kent signed the application, asserting, under penalty of perjury: (1) "I occupied this property as my principal place of residence on Jan. 1 of the year(s) for which I am requesting the homestead exemption"; (2) "I currently occupy this property as my principal place of residence"; (3) "I have examined this application, and to the best of my knowledge and belief, this application is true, correct and complete."

{¶ 29} As the tax commissioner found, the claim of homestead exemption contradicted the income tax affidavit in two respects: it asserted that the Cincinnati house was the principal place of residence and that the Tennessee house was a second or vacation home. For purposes of the homestead exemption, R.C. 323.151(A)(1) defines "homestead" as "[a] dwelling * * * owned and occupied as a home by an individual whose domicile is in this state." The tax commissioner found that claiming the property-tax exemption was inconsistent with claiming non-Ohio domicile for 2008.

{¶ 30} We conclude that there is a substantial factual basis for rejecting the claim of non-Ohio domicile as a false statement. (Our holding in this case should not be construed as impugning the motives of the taxpayer. The Cunninghams appear to have acted on the basis of a good-faith belief that the statements in the two affidavits were not contradictory.)

{¶ 31} The Cunninghams argue that the irrebuttable presumption provided by R.C. 5747.24(B)(1) loses all force if the commissioner can make a false-statement

finding with respect to the taxpayer's domicile verification. We conclude that when the tax commissioner has information that furnishes a substantial basis for rejecting the claim of non-Ohio domicile and he sets forth that basis in his determination, the statute does not fail of its essential purpose of streamlining domicile determinations. The tax commissioner would not be justified in making a false-statement finding unless he could point to specific information that warranted the finding. We hold that the commissioner must set forth his basis for determining that the domicile statement is false and that when he does so, the purposes of the statute have not been frustrated.

{¶ 32} As noted, R.C. 5747.24(B)(1) specifically states that "[i]f the individual * * * makes a false statement, the individual is presumed under division (C) of this section to have been domiciled in this state the entire taxable year." Under division (C), a taxpayer who is not irrebuttably presumed to be domiciled outside Ohio may prove non-Ohio domicile by a preponderance of the evidence. In this case, the tax commissioner correctly proceeded, after making his false-statement finding, to consider whether the evidence rebutted the presumption of Ohio domicile under division (C); he understandably concluded that it did not.

## CONCLUSION

{¶ 33} The BTA erred by reversing the tax commissioner's denial of the irrebuttable presumption created under R.C. 5747.24(B)(1). Because the Cunninghams concede that they were Ohio domiciliaries under the common law for 2008, there is no call for any further determination of that issue. We therefore reverse the decision of the BTA and reinstate the tax commissioner's assessment.

Decision reversed.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, and O'NEILL, JJ., concur.

KENNEDY and FRENCH, JJ., dissent.

———————

**FRENCH, J., dissenting.**

{¶ 34} Kent Cunningham demonstrated that he performed the actions R.C. 5747.24(B)(1) requires to raise an irrebuttable presumption that for purposes of Ohio's income tax, he was not domiciled in Ohio during 2008. Those actions were three in number: (1) he maintained an abode outside the state during the year at issue (here, the house in Tennessee qualified as such an abode), (2) he limited his presence in Ohio to 182 contact periods or fewer, and (3) he timely filed a statement attesting to the foregoing facts while also verifying that he was in fact domiciled outside Ohio during the entire year. Because Cunningham satisfied these three criteria, I would hold that he was entitled to the irrebuttable

presumption the statute prescribes. Therefore, I respectfully dissent from the majority's contrary holding.

{¶ 35} The key issue of statutory construction lies in whether the tax commissioner may make a finding that the taxpayer's verification of out-of-state domicile is false. The majority holds that the commissioner may do so based on other information in his possession. But this interpretation contradicts the irrebuttability of the presumption that arises once a taxpayer has satisfied the three criteria, as Cunningham has done here. A contrary state of the facts can defeat a rebuttable presumption, but not an irrebuttable one. *See Black's Law Dictionary* 957, 1377 (10th Ed.2014) (recognizing "irrebuttable presumption" as synonymous with "conclusive presumption," which is "[a] presumption that cannot be overcome by any additional evidence or argument because it is accepted as irrefutable proof that establishes a fact beyond dispute").

{¶ 36} I agree with the conclusion of the Board of Tax Appeals ("BTA") that R.C. 5747.24(B)(1) permits a finding of false statement only with respect to out-of-state abode and number of contact periods as predicate facts. I also concur with the BTA's trenchant observation that the tax commissioner's approach "essentially renders the 'bright-line' non-residency status established by R.C. 5747.24(B) moot, as the commissioner could always challenge the veracity of the statement that the taxpayer was not domiciled in Ohio." BTA No. 2011–4641, 2014 WL 1155688, *3 (Mar. 6, 2014).

{¶ 37} Whether a taxpayer is domiciled in Ohio is a finding of ultimate fact that includes a legal conclusion predicated on the underlying basic facts. In my view, the purpose of R.C. 5747.24(B)(1) is to premise the legal conclusion on *selected* basic facts (namely, out-of-state abode and number of contact periods) to the exclusion of other facts that would be significant under the common-law test. Indeed, the essential purpose of R.C. 5747.24(B)(1)'s irrebuttable presumption is to avoid the wide-ranging and open-ended inquiry into a myriad of domicile facts that occurs under common law.

{¶ 38} In *Davis v. Limbach,* BTA No. 89–C–267, 1992 WL 275694, *4 (Sept. 25, 1992), the BTA noted that "[t]here is no bright line test stating exactly which factors are necessary for an individual to effectively change his domicile." At the next regular legislative session, the General Assembly enacted the first version of R.C. 5747.24. S.B. No. 123, 145 Ohio Laws, Part I, 1113. In doing so, the General Assembly's stated purpose included "establish[ing] income tax domicile tests." *Id.; Tyson v. Zaino,* BTA No. 2001–B–1327, 2003 WL 22294864, *4 (Oct. 3, 2003). In other words, by enacting R.C. 5747.24, the General Assembly sought to create the very "bright line" that the BTA had acknowledged was missing. The majority's interpretation defeats this legislative purpose.

{¶ 39} Also unpersuasive is the majority's acquiescence in the view that the Cunninghams' homestead-exemption application contradicts the verification of non-Ohio domicile under R.C. 5747.24. Majority opinion at ¶ 29. Two different taxes—the state income tax and the local real estate tax—have statutory provisions that create two different tax breaks. It lies well within the authority of the legislature to adopt different domicile standards for two completely different tax provisions, particularly where, as here, the legislature's actions expand the scope of exemption and restrict the scope of taxation.

{¶ 40} The General Assembly had the authority to, and in my view did, decide to limit the reach of the state income tax as to persons who might otherwise qualify as residents under the common law. Doing so does not impair the General Assembly's authority to confer a real estate tax benefit based on a broader common-law definition of domicile. And if the law does indeed do what I have described, there is no reason why the taxpayer cannot claim the benefit of both tax breaks.

{¶ 41} For these reasons, I would affirm the decision of the BTA and remand to the tax commissioner for a determination of the amount of Cunningham's income, which must be removed from the tax assessment. Because the majority concludes otherwise, I dissent.

KENNEDY, J., concurs in the foregoing opinion.

_____

Taft, Stettinius & Hollister, L.L.P., and J. Donald Mottley, for appellees.

Michael DeWine, Attorney General, and Daniel W. Fausey and Melissa W. Baldwin, Assistant Attorneys General, for appellant.