**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Corrigan v. Testa,* **Slip Opinion No. 2016-Ohio-2805.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-2805

CORRIGAN, APPELLANT, *v*. TESTA, TAX COMMR., APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Corrigan v. Testa,* **Slip Opinion No. 2016-Ohio-2805.]**

*Income taxation—R.C. 5747.212—Statute violates Due Process Clause of Fourteenth Amendment as applied to nonresident taxpayer's capital gain from sale of ownership in limited-liability company that conducted business in Ohio—Board of Tax Appeals' decision reversed and matter remanded to tax commissioner for grant of refund.*

(No. 2014-1836—Submitted February 23, 2016—Decided May 4, 2016.)

APPEAL from the Board of Tax Appeals, No. 2012-3244.

_____

**O'CONNOR, C.J.**

{¶ 1} A 2002 amendment to R.C. 5747.212 broadly imposed Ohio's income tax on a capital gain realized by an out-of-state investor in a pass-through entity if that investor held a 20 percent or greater interest in the entity during a three-year period including the taxable year.  The new statute apportioned the capital gain to

Ohio based on the percentage of the entity's business conducted in this state during the three-year period. In this appeal, appellant, Patton R. Corrigan, a nonresident taxpayer, contests R.C. 5747.212's imposition of income tax on a portion of the capital gain that he realized in 2004 when he sold his ownership interest in Mansfield Plumbing, L.L.C., a producer of sanitary supplies.

{¶ 2} The resolution of Corrigan's challenge turns on a crucial distinction: Ohio's taxation of Mansfield Plumbing's income to Corrigan and Ohio's taxation of Corrigan's capital gain from the sale of Mansfield Plumbing. It is undisputed that because Mansfield Plumbing constituted a pass-through entity for tax purposes, Ohio was able to tax Corrigan's distributive share of the entity's income (or in this case, loss) based on Mansfield Plumbing's own business activity in Ohio. The issue before us is whether Ohio may also levy income tax on Corrigan's capital gain as if it were income from the business itself.

{¶ 3} If R.C. 5747.212 were not the law, Corrigan would be subject to the ordinary treatment of capital gains derived from intangible property: he would allocate the entire amount of the gain outside Ohio because he was not domiciled in Ohio. *See* R.C. 5747.20(B)(2)(c). Corrigan asserts that applying R.C. 5747.212 to him is unconstitutional and that he should therefore be permitted to allocate the gain entirely outside Ohio.

{¶ 4} In defending the imposition of R.C. 5747.212 on Corrigan, the tax commissioner does not contend that Corrigan himself was operating or managing the business of Mansfield Plumbing. Instead, the state's theory is that Ohio enjoys the constitutional prerogative of taxing the proceeds of a nonresident's out-of-state sale of intangible property, based on nothing more than the fact that the entity being sold conducted some of its business in Ohio. We disagree with the state's contention.

{¶ 5} We hold that R.C. 5747.212, as applied to Corrigan, violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

We therefore reverse the decision of the Board of Tax Appeals ("BTA") and remand to the tax commissioner to grant Corrigan a refund.

## RELEVANT BACKGROUND

### FACTS

{¶ 6} In 2000, Mansfield Plumbing was an established enterprise engaged in producing sanitary ware, with plants in Texas and California. It did business in Ohio—in fact in all 50 states—as well as in other countries.

{¶ 7} In 2000, Corrigan, then a resident of Connecticut, acted in concert with business associates to acquire the assets of Mansfield Plumbing, including the right to use that entity's name. More specifically, the record demonstrates that the consent to use the name "Mansfield Plumbing, L.L.C." is dated November 2000 and that Corrigan's share of the entity—his "membership" interest in the limited-liability company—was 79.29 percent.

{¶ 8} Corrigan became the main co-owner and a "manager," i.e., a member of the board of managers of Mansfield Plumbing. The day-to-day operations of the company were overseen by officers and managers employed by the company. According to Corrigan's brief before the tax commissioner, as a manager, Corrigan visited the company headquarters in Perrysville, Ohio, "for board meetings and management presentations regarding operations, labor, finance, strategic positioning and other matters important to the goal of growing Mansfield's market share." Corrigan testified that that involvement was "easily a hundred hours" per year. According to Corrigan, his role and capacity was as an "investo[r] who bought companies with the intention of providing financing and strategic expertise to grow the company for an eventual exit via a sale to a third party." Corrigan specifically argued to the tax department that his role in the entity involved "stewardship" rather than active management of the business.

{¶ 9} In 2004, Corrigan and his fellow investors sold their interests in Mansfield Plumbing to a third party, Ceramicorp, Inc., a unit of a Colombian entity

in the sanitary-wares business that wanted a foothold in North America. As a result of the sale, Corrigan realized a capital gain of $27,563,977 from his share of Mansfield Plumbing. In filing his returns for tax year 2004, Corrigan treated the entire amount of the gain as allocable outside Ohio, apparently because Corrigan was not domiciled in Ohio.

### PROCEDURAL HISTORY

{¶ 10} In 2009, Ohio issued an assessment for an unpaid 2004 tax liability of $674,924.58, which, with interest, amounted to a total assessment of $847,085.19. Corrigan paid $100,000 of the assessment, then filed a refund claim for that amount on March 8, 2010. *See* former R.C. 5747.11(A)(3), Am.Sub.H.B. No. 530, 151 Ohio Laws, Part IV, 6700 (requiring the tax commissioner to refund amounts more than $1 "paid on an illegal, erroneous, or excessive assessment"). These proceedings arise from that claim.

{¶ 11} The tax commissioner denied the refund claim through a final determination issued on August 20, 2012. The final determination applied a straightforward reading of R.C. 5747.212 and concluded that the assessment and payment complied with the statute. The final determination also rejected Corrigan's constitutional arguments.

{¶ 12} Corrigan appealed to the BTA, which held a hearing on January 15, 2014. Corrigan testified at the hearing.

{¶ 13} The BTA issued its decision on September 24, 2014. Noting the presumption favoring the tax commissioner's findings and its own lack of jurisdiction to declare a statute unconstitutional, the BTA "acknowledge[d]" Corrigan's constitutional claims but made "no findings in relation thereto." 2014 Ohio Tax LEXIS 4415, BTA No. 2012-3244, at 4 (Sept. 24, 2014). The BTA also noted that Corrigan raised a statutory argument in his BTA brief but held that it

lacked jurisdiction to entertain that contention because Corrigan had not specified that claim in his notice of appeal to the BTA.[1] *Id.*

{¶ 14} The BTA affirmed the tax commissioner's final determination, and Corrigan appealed to this court.

## ANALYSIS

### THE DUE PROCESS AND COMMERCE CLAUSES
### SET LIMITS ON OHIO'S TAXING AUTHORITY

{¶ 15} "It is a venerable if trite observation that seizure of property by the State under pretext of taxation when there is no jurisdiction or power to tax is simple confiscation and a denial of due process of law. '* * * Jurisdiction is as necessary to valid legislative as to valid judicial action.' " *Miller Bros. Co. v. Maryland*, 347 U.S. 340, 342, 74 S.Ct. 535, 98 L.Ed. 744 (1954), quoting *St. Louis v. Wiggins Ferry Co.*, 78 U.S. 423, 430, 20 L.Ed. 192 (1870). And "[g]overnmental jurisdiction in matters of taxation * * * depends upon the power to enforce the mandate of the state by action taken within its borders, either *in personam* or *in rem*." *Shaffer v. Carter*, 252 U.S. 37, 49, 40 S.Ct. 221, 64 L.Ed. 445 (1920). These precepts point to the importance of the Due Process Clause of the Fourteenth Amendment as a means of "guarding against extraterritorial taxation" by defining the limits of state taxing authority. *Hillenmeyer v. Cleveland Bd. of Rev.*, 144 Ohio St.3d 165, 2015-Ohio-1623, 41 N.E.3d 1164, ¶ 40. Additionally, the United States Supreme Court has held that under the Due Process Clause, "the States * * * are subject to limitations on their taxation powers that do not apply to the Federal Government." *F.W. Woolworth Co. v. New Mexico Taxation and Revenue Dept.*, 458 U.S. 354, 363, 102 S.Ct. 3128, 73 L.Ed.2d 819 (1982).

---

[1] Corrigan contended that the commissioner's determination significantly overstated the amount of the capital gain based on intricacies of the Internal Revenue Code. Corrigan has not raised this contention before this court.

**{¶ 16}** Similarly, the dormant Commerce Clause imposes its own restrictions upon state taxing power. "By prohibiting States from discriminating against or imposing excessive burdens on interstate commerce without congressional approval, [the dormant Commerce Clause] strikes at one of the chief evils that led to the adoption of the Constitution, namely, state tariffs and other laws that burdened interstate commerce." *Maryland Comptroller of Treasury v. Wynne*, ___ U.S. ___, 135 S.Ct. 1787, 1794, 191 L.Ed.2d 813 (2015).

**{¶ 17}** "Due process centrally concerns the fundamental fairness of government activity," while the Commerce Clause reflects "structural concerns about the effects of state regulation on the national economy." *Quill Corp. v. North Dakota*, 504 U.S. 298, 312, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992). Although the constraints imposed by the Due Process Clause and the Commerce Clause are distinct, they partially overlap. Commerce Clause restrictions may run parallel to Due Process Clause restrictions or be imposed in addition to Due Process Clause constraints. That said, under both the Due Process Clause and the Commerce Clause, the bedrock principle is "that a State may not tax value earned outside its borders." *Allied-Signal, Inc. v. Dir., Div. of Taxation*, 504 U.S. 768, 777, 784, 112 S.Ct. 2251, 119 L.Ed.2d 533 (1992). " 'No principle is better settled,' " the high court has stated, " 'than that the power of a state, even its power of taxation, in respect to property, is limited to such as is within its jurisdiction.' " *Miller Bros.* at 342, quoting *New York, Lake Erie & W. RR. Co. v. Pennsylvania*, 153 U.S. 628, 646, 14 S.Ct. 952, 38 L.Ed. 846 (1894).

**{¶ 18}** In considering this case, we are persuaded that the assessment of a tax on Corrigan's capital gain cannot be sustained under the basic due-process test for the exercise of proper tax jurisdiction. Our disposition of the appeal on those grounds obviates the need for any separate analysis under the Commerce Clause.

### THE OPERATION OF THE TAX STATUTES AS APPLIED TO CORRIGAN

{¶ 19} As a general matter, Ohio imposes individual income tax on "every individual * * * residing in or earning or receiving income in this state." R.C. 5747.02(A); *Cunningham v. Testa*, 144 Ohio St.3d 40, 2015-Ohio-2744, 40 N.E.3d 1096, ¶ 9. Corrigan is a nonresident, nondomiciliary of Ohio; as such, he is subject to Ohio income tax only with respect to his income earned or received in this state. *Id*.

*During his majority ownership, Corrigan was subject to Ohio income tax on a portion of his distributive share of Mansfield Plumbing's "business income"*

{¶ 20} R.C. Chapter 5747 puts flesh on the bones of the concept of "earning or receiving income in this state." In acquiring his controlling interest in Mansfield Plumbing in 2000, Corrigan subjected himself to Ohio income taxation because of the pass-through nature of the entity in which he invested and by which he sought to profit.

{¶ 21} Ohio's income tax distinguishes between "business income" and "nonbusiness income." As a general matter, business income is defined as income from "the regular course of a trade or business" and is apportioned to Ohio according to the percentage of the business's property, payroll, and receipts located in Ohio. *See* R.C. 5747.01(B) (definition of business income) and 5747.21(B) (providing for apportionment of business income by reference to apportionment statutes of the former corporate franchise tax, R.C. Chapter 5733).

{¶ 22} By contrast, nonbusiness income includes compensation, rents, royalties, and capital gains and is specifically allocated to a situs. R.C. 5747.02(C) and 5747.20. Compensation, for example, is specifically allocated to the place where the services were performed; rents are specially allocated to the place where the rental property is located. R.C. 5747.20(B)(1) and (3). In the case of capital gains from the sale of intangible personal property, the tax situs is the domicile of the taxpayer. R.C. 5747.20(B)(2)(c).

**{¶ 23}** As majority owner of Mansfield Plumbing for tax years 2000 through 2004 and as a result of that entity being organized and treated as a pass-through entity for tax purposes, Corrigan realized his distributive share of the income or loss that was generated by Mansfield Plumbing's business. Because that income or loss qualified under the business-income definition as business income or loss to the entity itself, it was deemed to be business income as to Corrigan as the pass-through taxpayer who included it on his return. *See Agley v. Tracy*, 87 Ohio St.3d 265, 268, 719 N.E.2d 951 (1999) (income derived from an S corporation's business activity that passed through the individual taxpayer's tax return was business income as to the individual taxpayer); R.C. 5747.231.

**{¶ 24}** The appearance of any income from Mansfield Plumbing as part of Corrigan's federal adjusted gross income would mean that the same income would have been included in Corrigan's Ohio adjusted gross income. To eliminate Ohio tax on income generated by business conducted outside Ohio, Corrigan would have had recourse to the nonresident credit, R.C. 5747.05(A); that credit would offset the Ohio tax on his distributive share that related to business that Mansfield Plumbing conducted outside Ohio.

**{¶ 25}** In actuality, however, Mansfield Plumbing realized losses rather than profits during the years of Corrigan's ownership, and those losses were reported on a composite return filed by Mansfield Plumbing on behalf of its members. Corrigan personally filed Form IT 1040s in Ohio for those years, claiming a 100 percent nonresident credit.

**{¶ 26}** Although bereft of profits from his Mansfield Plumbing investment, Corrigan apparently realized a different kind of financial benefit from his ownership of the business: he apparently was able to use his Mansfield Plumbing losses to offset other income and reduce the taxes he owed to other jurisdictions.[2]

---

[2] Both the audit remarks and Corrigan's testimony at the BTA indicate that the hours Corrigan spent managing Mansfield Plumbing and other businesses that he owned satisfied a standard of

*But for R.C. 5747.212, Corrigan would pay no Ohio tax on his capital gain because that gain would have its tax situs outside Ohio*

**{¶ 27}** In 2004, Corrigan and his fellow investors sold 100 percent of their membership interests in Mansfield Plumbing. They realized capital gain from the transaction, and in the ordinary course, Corrigan's capital gain would not have been allocated to Ohio because Ohio was not Corrigan's residence and domicile.

**{¶ 28}** Corrigan claimed a nonresident credit that eliminated all Ohio liability in 2004. But in 2009, the tax department issued its assessment based on former R.C. 5747.212. The operative part of the version of the statute in effect during tax year 2004 read as follows:

> A pass-through entity investor that owns, directly or indirectly, at least twenty per cent of the pass-through entity at any time during the current taxable year or either of the two preceding taxable years shall apportion any income, including gain or loss, realized from the sale, exchange, or other disposition of a debt or equity interest in the entity as prescribed in this section. For such purposes, in lieu of using the method prescribed by sections 5747.20 and 5747.21 of the Revised Code, the investor shall apportion the income using the average of the pass-through entity's apportionment fractions otherwise applicable under section 5747.21 of the Revised Code for the current and two preceding taxable years. If the pass-through entity was not in business for one or more of those years, each year that the entity was not in business shall be excluded in determining the average.

---

participation under the Internal Revenue Code. Consequently, the Mansfield losses qualified as nonpassive, thereby permitting Corrigan to use those losses more broadly as an offset against his income.

Am.Sub.S.B. No. 261, 149 Ohio Laws, Part I, 1793, 1870.[3]

{¶ 29} Corrigan's situation came within R.C. 5747.212 because he owned over 79 percent of Mansfield Plumbing, thereby clearing the 20 percent threshold, and because he realized a gain from selling his equity interest in Mansfield Plumbing during 2004.

## DUE PROCESS PREDICATES TAXATION OF A NONRESIDENT'S INCOME ON OHIO'S CONNECTION TO BOTH THE TAXPAYER AND THE TRANSACTION

{¶ 30} Due process " 'requires some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax.' " *Quill*, 504 U.S. at 306, 112 S.Ct. 1904, 119 L.Ed.2d 91, quoting *Miller Bros.*, 347 U.S. at 344-345, 74 S.Ct. 535, 98 L.Ed.2d 744.

{¶ 31} A state's taxing jurisdiction may be exercised over all of a resident's income based upon the state's in personam jurisdiction over that person. *Hillenmeyer*, 144 Ohio St.3d 165, 2015-Ohio-1623, 41 N.E.3d 1164, at ¶ 41, citing *Shaffer*, 252 U.S. at 52, 40 S.Ct. 221, 64 L.Ed. 445. By contrast, the power to tax nonresidents reflects the state's in rem jurisdiction over the income-producing activities conducted within the state:

> "[J]ust as a State may impose general income taxes upon its own citizens and residents whose persons are subject to its control it may, as a necessary consequence, levy a duty of like character, and not more onerous in its effect, upon incomes accruing to non-residents

---

[3] This was the original version of the statute, which was enacted in 2002. The version quoted by the tax commissioner in his final determination reflected amendments to the statute made in 2005 that were not in effect at the time Corrigan incurred his tax liabilities for tax year 2004. *See* Am.Sub.H.B. No. 66, 151 Ohio Laws, Part III, 4674.

from their property or business within the State, or their occupations carried on therein."

(Emphasis deleted.) *Hillenmeyer* at ¶ 42, quoting *Shaffer* at 52.

**{¶ 32}** Inherent in the Supreme Court's pronouncement in *Shaffer* is the need for a link between the state and the person being taxed as well as between the state and the activity being taxed. The former is expressed in terms of the minimum-contacts test that is familiar in the context of determining the personal jurisdiction that may be exercised by a court sitting in one state and issuing process to a person in another state. *See Quill* at 307, citing *Internatl. Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). Applying principles from this area of the law, due process requires that a person whom a state proposes to tax have "purposefully availed" himself of benefits within the taxing state. *Id*.

**{¶ 33}** In addition to the state's connection with the person to be taxed, "in the case of a tax on an activity, there must be a connection to the activity itself, rather than a connection only to the actor the State seeks to tax." *Allied-Signal*, 504 U.S. at 778, 112 S.Ct. 2251, 119 L.Ed.2d 533. In *Allied-Signal*, New Jersey attempted to tax one corporation's gain from selling its shares in another corporation, and the court clarified that the mere fact that the taxpayer performed some of its business within the taxing state did not by itself permit the taxation of that taxpayer's gain from the sale of shares of another corporation. Instead, the high court enforced its earlier pronouncement that "[a] State may not tax a nondomiciliary corporation's income * * * if it is 'derived from "unrelated business activity" which constitutes a "discrete business enterprise." ' " *Id*. at 773, quoting *Exxon Corp. v. Wisconsin Dept. of Revenue*, 447 U.S. 207, 224, 100 S.Ct. 2109, 65 L.Ed.2d 66 (1980), quoting *Mobil Oil Corp. v. Vermont Commr. of Taxes*, 445 U.S. 425, 442, 439, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980).

*Ohio-derived income may be taxed to the person*

*whose business activity generated the income*

**{¶ 34}** *Shaffer* demonstrates that the direct conduct of business subjects the nonresident person conducting the business to a tax on the proportionate share of business conducted within the taxing state. Under *Shaffer*, this scenario relies on the state's in rem jurisdiction over the income generated by in-state activity. But the situation also entails the taxpayer's purposeful availment of the protections and benefits of the state's laws by conducting a portion of the business within that state. *Quill*, 504 U.S. at 307, 112 S.Ct. 1904, 119 L.Ed.2d 91, citing *Shaffer*, 433 U.S. at 212, 97 S.Ct. 2569, 53 L.Ed.2d 683.

*Distributive share may be taxed because the income taxed is generated by Ohio*

*business activity and the pass-through establishes "purposeful availment"*

**{¶ 35}** Do due-process protections permit Ohio to impose its individual income tax on the distributive-share income of a nonresident who realizes pass-through income? We answered affirmatively in *Agley*, 87 Ohio St.3d 265, 719 N.E.2d 951:

> Appellants have admitted that their S corporations conducted business in Ohio. Thus, it is evident that the S corporations have utilized the protections and benefits of Ohio by carrying on business here. This income was then passed through to the appellants as personal income. Thus, the appellants, through their S corporations, have also availed themselves of Ohio's benefits, protections, and opportunities by earning income in Ohio through their respective S corporations. We find that this provides Ohio the "minimum contacts" with the appellants to justify taxing appellants on their distributive share of income.

*Id.* at 267. Simply stated, even though the taxpayers in *Agley* were nonresidents who did not themselves conduct business in Ohio, we determined that their decision to invest using corporate structures in Ohio and making federal pass-through elections satisfied the purposeful-availment criterion for imposing the tax obligation on them personally.

*Capital gain is generated by the sale of intangible property*
*rather than by Ohio business activity,*
*and thus selling the shares does not involve purposeful availment*

{¶ 36} The tax at issue here differs, however, with respect to Ohio's connection both to the activity and to the taxpayer. In this case, the activity at issue is a transfer of intangible property by a nonresident. Thus, Ohio's connection is an indirect one, whereas in *Agley* the activity being taxed was the very income derived from business activity in Ohio. Moreover, although Corrigan's availment of Ohio's protections and benefits is clear with respect to the pass-through of Mansfield Plumbing's income to him, Corrigan's sale of his interest in Mansfield Plumbing did not avail him of Ohio's protections and benefits in any direct way.

{¶ 37} For these reasons, we conclude that *Agley* does not extend to Corrigan's capital gain.

**THE UNITED STATES SUPREME COURT'S PRECEDENTS DO NOT ESTABLISH the CONSTITUTIONALITY OF APPLYING R.C. 5747.212 TO CORRIGAN**

{¶ 38} Corrigan and the tax commissioner rely on competing United States Supreme Court cases.

{¶ 39} Corrigan emphasizes more recent cases in which the U.S. Supreme Court has established that a state may not tax the dividends received by a nonresident corporation from another corporation, or the capital gain realized from selling shares in another corporation, absent a unitary business relationship between the taxpayer and the other corporation. *See MeadWestvaco Corp. v. Illinois Dept. of Revenue*, 553 U.S. 16, 128 S.Ct. 1498, 170 L.Ed.2d 404 (2008); *Allied-Signal*,

504 U.S. 768, 112 S.Ct. 2251, 119 L.Ed.2d 533; *ASARCO, Inc. v. Idaho State Tax Comm.*, 458 U.S. 307, 102 S.Ct. 3103, 73 L.Ed.2d 787 (1982); *F.W. Woolworth*, 458 U.S. at 363, 102 S.Ct. 3128, 73 L.Ed.2d 819. By extension, Corrigan contends that Ohio may not tax his capital gain unless Corrigan himself has engaged in a business that is unitary with that of Mansfield Plumbing. As supplemental authority, Corrigan points out that we have already applied *ASARCO* in a corporate franchise tax case to bar the apportionment of investment income as business income of the taxpayer. *See Am. Home Prods. Corp. v. Limbach*, 49 Ohio St.3d 158, 160-161, 551 N.E.2d 201 (1990), citing *ASARCO*.

{¶ 40} The tax commissioner relies on a pair of older Supreme Court decisions addressing and upholding the imposition of Wisconsin's "privilege dividend tax." *See Internatl. Harvester*, 322 U.S. 435, 64 S.Ct. 1060, 88 L.Ed. 1373; *Wisconsin v. J.C. Penney Co.*, 311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267 (1940). Instead of being imposed directly on corporate income, the privilege dividend tax was imposed on the privilege of declaring and receiving dividends; in practical operation, the tax required corporations to withhold from the payment of a dividend the amount of the tax and remit the tax to the state. *See J.C. Penney* at 440, fn. 1 (quoting the underlying statute).

{¶ 41} In both older cases, the Supreme Court upheld the measure.

{¶ 42} In *J.C. Penney*, the high court hypothesized that a "supplementary tax on the Wisconsin earnings of [foreign] corporations" that simply "postponed liability for the tax until such earnings were to be paid out in dividends" was consistent with due process and that the characterization of the tax as being levied on the privilege of declaring and receiving dividends should not change the result. *Id.* at 442-444. The court therefore reversed the Wisconsin Supreme Court's holding that the privilege dividend tax was unconstitutional.

{¶ 43} In *Internatl. Harvester*, the high court considered the privilege dividend tax anew in light of the Wisconsin Supreme Court's clarifications that for

14

state constitutional purposes, the tax was a privilege rather than an income tax and that the corporation was not entitled to deduct the privilege dividend tax because the burden of the tax fell upon stockholders. *Internatl. Harvester* at 438-439. The United States Supreme Court affirmed, adhering to its holding in *J.C. Penney*.

{¶ 44} In arguing that *J.C. Penney* and *Internatl. Harvester* control here, the tax commissioner points to the fact that the present case involves using the business-income factors of Mansfield Plumbing, whereas the *MeadWestvaco* and *Allied-Signal* line of cases involved state taxes that attempted to use *the taxpayer's* business-income factors to apportion the dividend or capital-gain income. This distinction is one that can be characterized as the difference between the "investor apportionment" analysis, in which the courts look at the nexus between the taxpayer/investor (like Corrigan) and the jurisdiction, *see, e.g.*, *MeadWestvaco* and *Allied-Signal*, and the "investee apportionment" analysis, in which the courts look at the nexus between the investee (like Mansfield Plumbing) and the taxing jurisdiction, *see, e.g.*, *J.C. Penney* and *Internatl. Harvester*.

{¶ 45} Seizing on this distinction, the tax commissioner asserts that the unitary-business doctrine, which defined the limits of constitutionality in the *MeadWestvaco* and *Allied-Signal* cases, is irrelevant here. The tax commissioner contends that the taxpayer's liability is determined by the business done by *the entity in which the taxpayer has invested* and that the investment income realized—whether that income is a dividend, a capital gain from the sale of the investment, or the payment of a debt—may be taxed *to the nonresident investor*. In this manner, the tax commissioner attempts to justify apportioning both the capital gain and the debt interest pursuant to R.C. 5747.212.

{¶ 46} We disagree.

{¶ 47} First and foremost, *J.C. Penney* and *Internatl. Harvester* address a tax law that, unlike R.C. 5747.212, never imposes tax liability *on the investor*. To be sure, in upholding the tax, the high court accepted the proposition that the

economic burden of Wisconsin's privilege dividend tax fell upon nonresident investors, even though it was actually paid by the corporation that declared and paid the dividend. But the propriety of imposing the economic burden of a tax on a nonresident does not necessarily require the conclusion that *the tax liability itself* can be imposed on those nonresident investors. The Wisconsin statute at issue did not do so, and the decisions upholding that statute should not be construed to authorize other statutes that were not under review by the high court at that time.

{¶ 48} Second, even if *J.C. Penney* and *Internatl. Harvester* were construed to extend to the imposition of a state income tax on the nonresident *recipient of a dividend*, that would still not require the conclusion that the same reasoning extends to a capital gain from the sale of corporate ownership. It is self-evident that the dividend has a more direct relationship to corporate earnings, out of which the dividend is paid, than does the capital gain from the sale of corporate ownership. Indeed, it is possible in a given situation that the purchaser of a business may be more interested in acquiring specific business assets than in the profits generated by the ongoing business. That could, in fact, be true here inasmuch as Mansfield Plumbing realized losses in the years immediately preceding the sale.

{¶ 49} Third, our reluctance to accept the tax commissioner's expansive interpretation of *J.C. Penney* and *Internatl. Harvester* is consistent with *MeadWestvaco*.

{¶ 50} In *MeadWestvaco*, the taxpayer had sold its Lexis-Nexis division, booking an intangible "goodwill" gain of about $1 billion, which the taxpayer treated as nonbusiness income allocable to its domicile outside Illinois. *See* 371 Ill.App.3d 108, 113, 861 N.E.2d 1131 (2007), *reversed*, 553 U.S. 16, 128 S.Ct. 1498, 170 L.Ed.2d 404. The state revenue department recharacterized the income as apportionable business income of the taxpayer, and the Illinois courts affirmed. But the United States Supreme Court reversed on the basis of the *Allied-Signal* line

16

of cases and the unitary-business doctrine. 553 U.S. at 29-30, 128 S.Ct. 1498, 170 L.Ed.2d 404.

{¶ 51} Of special relevance here is the question that the high court declined to address. As a fallback position, the state in *MeadWestvaco* had argued that Lexis-Nexis's own business in Illinois justified the imposition of the additional tax on its former parent's gain. The Supreme Court characterized this argument as "a new ground for the constitutional apportionment of intangibles based on the taxing State's contacts with the capital asset rather than the taxpayer." *Id.* at 30. (Using the terminology we have employed in this opinion, Illinois was arguing for investee apportionment as an alternative to investor apportionment.) The court then declined to address the "new ground" for apportionment for two reasons. First, it noted that the argument had not previously been raised and passed upon. Second, it recognized that the states that relied on investee apportionment, including Ohio, had not been notified that the constitutionality of their statutes would be determined. *Id.* at 31.[4] In other words, the United States Supreme Court regards the imposition of an investee-apportioned tax on the gain realized by an investor as an unsettled question. Because the high court has not answered that question, we cannot properly regard it as settled by *J.C. Penney* and *Internatl. Harvester*.

### STATE COURT CASES DO NOT SUPPORT APPLYING R.C. 5747.212 TO CORRIGAN'S CAPITAL GAIN

{¶ 52} The tax commissioner also relies on state court decisions as support for applying R.C. 5747.212 to Corrigan's capital gain. Most notably, in his brief and at oral argument, the commissioner relied heavily on the Louisiana Supreme

---

[4] The Supreme Court recognized that the Ohio corporation franchise tax contained investee-apportionment provisions at R.C. 5733.051(E) and (F). *MeadWestvaco* at 31. Division (E) calls for investee apportionment of a corporate taxpayer's capital gains, and division (F) calls for investee apportionment of a corporate taxpayer's dividend income. With the phase-out of the franchise tax for most businesses pursuant to the 2005 tax-reform legislation, these provisions have a greatly diminished significance. *See Navistar, Inc. v. Testa*, 143 Ohio St.3d 460, 2015-Ohio-3283, 39 N.E.3d 509, ¶ 1 (discussing 2005 tax-reform legislation).

Court's decision in *Johnson v. Collector of Revenue*, 246 La. 540, 165 So.2d 466 (1964).

{¶ 53} In *Johnson*, a corporation held as its sole asset certain lands in Louisiana on which oil and gas production activities were conducted. Those activities had led to an appreciation in the value of the land, and accordingly, when the corporation liquidated itself by exchanging shares for interests in the direct ownership of the land, the state assessed a tax on the pro rata capital gain of the shareholders. As in the present case, the intangible stock-share interests were held and sold outside the taxing state, and the shareholders were nonresidents.

{¶ 54} The statute decisive to the decision upholding Louisiana's taxation of the capital gain read as follows:

> "In cases where property located in Louisiana is received by a shareholder in the liquidation of a corporation, the stock cancelled or redeemed in the liquidation shall, for purposes of determining taxable gain under this chapter, be deemed to have its taxable situs in this state to the extent that the property of the corporation distributed in liquidation is located in Louisiana. If only a portion of the property distributed in liquidation is located in Louisiana, only a corresponding portion of the gain realized by a shareholder shall be considered to be derived from Louisiana sources."

*Id.* at 567, quoting La.Rev.Stat. 47:159(H).

{¶ 55} The lower court had determined that the corporation had conducted no Louisiana business and that the assignment of Louisiana situs was "wholly fictitious and arbitrary, rendering the statute unconstitutional." *Id.* at 570. But the Louisiana Supreme Court reversed, observing that had the corporation itself sold the lands to a third party, the corporation would have paid Louisiana tax on that

gain from the disposition of in-state property. *Id.* at 572. The court explained that the statute quoted above was intended to prevent the use of a corporate liquidation and conveyance of Louisiana assets to avoid the imposition of tax on the gain associated with such property. "Clearly, such a gain from oil-producing lands in Louisiana reflects the protection and opportunities that the state has afforded," the court observed. *Id.* at 573.

**{¶ 56}** Counsel for the state characterizes the Louisiana statute as "identical" to R.C. 5747.212 and its application in this case. We are persuaded, however, not only that there are differences between the two schemes but also that those differences are of decisive import here.

**{¶ 57}** Far from broadly subjecting a nonresident's capital gain to in-state apportionment as R.C. 5747.212 does, the Louisiana statute applies only when nonresidents receive property with a Louisiana situs in conjunction with redemption of their corporate shares. Moreover, the Louisiana statute allocates the nonresident's gain to Louisiana only to the extent of the gain on those Louisiana assets.

**{¶ 58}** Quite simply, rather than broadly extending state taxing power to a nonresident's capital gain, the Louisiana statute does nothing more than prevent avoidance of the Louisiana tax on a capital gain from the sale of a Louisiana asset through a manipulation of corporate forms. We conclude that the Louisiana statute's limited purpose and effect bears no resemblance to the broad scope and expansive purpose of R.C. 5747.212 and is of limited value in addressing the constitutional question before us.

**{¶ 59}** One state court decision that genuinely adopts investee apportionment comes from the New York Court of Appeals. In *Allied-Signal, Inc. v. Commr. of Fin.*, 79 N.Y.2d 73, 580 N.Y.S.2d 696, 588 N.E.2d 731 (1991), New York's highest court upheld New York City's imposition of a tax on a nonresident parent corporation's capital gain from the sale of its interest in a subsidiary, where

the gain was apportioned to the city based on the subsidiary's business-income apportionment rather than the parent's. Based on its reading of the United States Supreme Court's decision in *Internatl. Harvester*, the New York Court of Appeals determined that New York City could assert a nexus with the investor's capital gain. *Allied-Signal* at 82-84.

{¶ 60} As already discussed, however, we decline to read *Internatl. Harvester* as authorizing the imposition of a tax *on the nonresident dividend recipient*, given that the statute at issue in that case imposed tax only on the corporation that paid the dividends. In this regard, we find one of the dissenting opinions in *Allied-Signal* persuasive. Namely, in his dissent, Judge Hancock faulted the majority for a leap of logic, asserting that the mere fact that the burden of the tax in *J.C. Penney* and *Internatl. Harvester* fell on the out-of-state shareholders did not mean that the state had a nexus to tax those shareholders directly. *Allied-Signal* at 102 (Hancock, J., dissenting).

{¶ 61} And contrary to the tax commissioner's argument, we find that our own decision in *Couchot v. State Lottery Comm.*, 74 Ohio St.3d 417, 659 N.E.2d 1225 (1996), is inapposite here. In that case, we examined the imposition of Ohio's income tax on the incremental payments to a nonresident winner of the Ohio lottery in light of constitutional challenges based on due-process, Commerce Clause, and retroactivity grounds. With respect to the basic due-process claim, we observed that "[i]t is difficult to imagine a more fundamental exertion of a state's taxing power than where the state taxes income on winnings from its lottery." *Id.* at 422. Indeed, the winning of the lottery game and the payments that ensued clearly constituted the enjoyment of Ohio-created benefits and protections that justified the imposition of the tax. That taxpayer's scenario, however, is quite different from Corrigan's—in law and in fact.

**ENFORCING DUE-PROCESS RESTRAINTS ON STATE TAXATION**

**DOES NOT ELEVATE FORM OVER SUBSTANCE**

{¶ 62} The tax commissioner argues that Ohio can tax a share of Corrigan's capital gain because the sale of the ownership interest is merely one form in which the business could be sold and the same gain would be taxable if the business had been sold through an asset sale instead. In his words, the tax commissioner contends that because taxation would be proper under "that economically equivalent situation," it must be proper in the context with which we are presented.

{¶ 63} This argument relies on R.C. 5747.01(B), which includes in the definition of business income the "gain or loss, from a partial or complete liquidation of a business, including, but not limited to, gain or loss from the sale or other disposition of goodwill." Thus, if Mansfield Plumbing had made a bulk transfer of its business assets rather than having the business transferred through a sale of the L.L.C. ownership itself, then the gain from the sale would have been realized at the L.L.C. level, and the Ohio-apportioned share would have been taxed to Corrigan on a pass-through basis. The commissioner argues that because the gain could be taxed to Corrigan in an asset sale, it may also be taxed in the form of Corrigan's individual capital gain.

{¶ 64} Although this argument may appear plausible, the jurisdictional question before us presents more than merely a matter of form.

{¶ 65} We recognize that an asset sale and a sale of ownership interest may be different forms involving the same *economic* substance to the parties, but that does not mean that the jurisdictional limits on Ohio's taxing powers lack their own substantive importance. Nor is it unusual that two different methods of achieving the same economic result could have drastically different tax implications.

{¶ 66} Moreover, the commissioner's "form over substance" argument can cut both ways. The commissioner argues that taxing Corrigan's personal capital gain is justified because Ohio law would apportion the gain from an asset sale as

business income. But one could, with equal logical force, assert that because the sale of assets in liquidation of the business is *in substance the same as the sale of the corporate ownership*, Ohio *cannot* constitutionally treat the gain from the asset sale as apportionable "business income."

{¶ 67} We decline to accept the form-over-substance argument as militating against our conclusion, which is based on other grounds, i.e., that Corrigan's capital gain may not be taxed.

## R.C. 5747.212 IS NOT FACIALLY UNCONSTITUTIONAL

{¶ 68} Corrigan has advanced both an as-applied and a facial challenge to R.C. 5747.212. Our holding of unconstitutionality today is limited to R.C. 5747.212 as applied to Corrigan, in light of the absence of any assertion or finding that Corrigan's own activities amounted to a unitary business with that of Mansfield Plumbing.

{¶ 69} Conceivably, an individual taxpayer might engage in the conduct of a business with or through a corporate entity, and under the *MeadWestvaco* and *Allied-Signal* line of cases, the imposition of tax under R.C. 5747.212 could be sustained. We therefore decline to hold that R.C. 5747.212 is facially unconstitutional because Corrigan has not demonstrated, as he must, that "there exists no set of circumstances under which the statute would be valid." *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 37. Because there is at least a possibility that the statute could be applied when the unitary-business situation is present,[5] we reject the facial challenge.

---

[5] Perhaps recognizing this possibility, Corrigan has made a distinct effort to establish that he has not engaged in active management here, distinguishing his efforts as merely the "stewardship" of a corporate director. For his part, the tax commissioner has consistently argued that the unitary-business doctrine is irrelevant rather than contend that the unitary-business relationship might be present.

{¶ 70} In light of our disposition of this appeal on due-process grounds, we need not and do not address Corrigan's claim that R.C. 5747.212 violates the Commerce Clause.

## CONCLUSION

{¶ 71} For the foregoing reasons, we reverse the decision of the BTA, and we remand to the tax commissioner with instructions to grant a refund to Corrigan.

Decision reversed

and cause remanded.

PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Taft, Stettinius & Hollister, L.L.P., and J. Donald Mottley, for appellant.

Michael DeWine, Attorney General, and Barton A. Hubbard, David D. Ebersole, and Raina M. Nahra, Assistant Attorneys General, for appellee.

Baker & Hostetler, L.L.P., Edward J. Bernert, Elizabeth A. McNellie, and Christopher J. Swift, urging reversal for amicus curiae, Ohio Chamber of Commerce.

_____