[This opinion has been published in *Ohio Official Reports* at 87 Ohio St.3d 265.]

AGLEY, APPELLANT, *v*. TRACY, TAX COMMISSIONER, APPELLEE.

AGLEY ET AL., APPELLANTS, *v*. TRACY, TAX COMMISSIONER, APPELLEE.

TIMMIS ET AL., APPELLANTS, *v*. TRACY, TAX COMMISSIONER, APPELLEE.

[Cite as *Agley v. Tracy*, 1999-Ohio-61.]

*Taxation—Income tax—Nonresident shareholders of a Subchapter S corporation that conducts business activities in Ohio are subject to income tax on their distributive share of the S corporation's income.*

(Nos. 98-1879, 98-1880 and 98-1881–Submitted September 21, 1999–Decided December 8, 1999.)

APPEALS from the Board of Tax Appeals, Nos. 96-R-302, 96-R-301 and 96-R-303.

————————————

{¶ 1} This matter involves three cases consolidated for review: *James R. Agley v. Tracy*, No. 98-1879; *Randolph J. and Judith A. Agley v. Tracy*, No. 98-1880; and *Michael T. and Nancy E. Timmis v. Tracy*, No. 98-1881. All appellants seek refunds on taxes paid on their respective distributive share income generated by Subchapter S corporations. Appellant James Agley seeks a refund for taxes he paid in the tax years of 1989, 1990, 1991, and 1992. Appellants Randolph and Judith Agley and appellants Michael and Nancy Timmis seek a refund for taxes paid in the tax years of 1988, 1989, 1990, 1991, and 1992.

{¶ 2} During these tax years, all the appellants were shareholders in the following corporations: F & M Distributors, Inc., Venture Packaging, Inc., and Diamond Automations, Inc. James Agley was also a shareholder in Middletown Aerospace. Appellants elected these corporations to be Subchapter S corporations for federal income tax purposes, pursuant to Subchapter S, Chapter 1, of Subtitle A of the Internal Revenue Code of 1986. These corporations were organized and

existed in Michigan and conducted business in Ohio. Appellants were not residents of, or domiciled within, Ohio during the disputed tax years. Appellants did not personally conduct any business within Ohio during the disputed tax years.

{¶ 3} For the disputed tax years, appellants included their pro-rata share of S corporation income or loss generated by the S corporations in their federal adjusted gross income. Appellants paid individual income tax to Ohio on their distributive share income generated by the S corporations.

{¶ 4} Appellants applied to appellee, Tax Commissioner, for personal income tax refunds for the disputed tax years. James Agley sought $9,942 in refunds, Randolph and Judith Agley sought $42,043 in refunds, and Michael and Nancy Timmis sought $41,003 in refunds. The Tax Commissioner denied the applications. The appellants appealed to the Board of Tax Appeals, which in each case affirmed the commissioner's order denying a refund.

{¶ 5} These causes are now before this court upon appeals of right.

_____

*Timmis & Inman L.L.P., George M. Malis* and *Erich J. D'Andrea, pro hac vice*, for appellants.

*Betty D. Montgomery*, Attorney General, and *Robert C. Maier*, Assistant Attorney General, for appellee.

_____

**LUNDBERG STRATTON, J.**

{¶ 6} The appellants assert five propositions of law in support of their contention that an out-of-state shareholder should not be taxed in Ohio on the distributive share of income he or she receives from his or her S corporation that is doing business in Ohio. For the following reasons, we disagree. Thus, we affirm the Board of Tax Appeals in each case.

{¶ 7} Appellants argue that nonresident shareholders of an S corporation that conducts business activities in Ohio should not be subject to income tax on

2

their distributive share of the S corporation's income under R.C. 5747.02 because it is the S corporation that earns the income, not the shareholder. We recently rejected this argument in *Dupee v. Tracy* (1999), 85 Ohio St.3d 350, 351, 708 N.E.2d 698, 700, because this position ignores the "flow through" nature of an S corporation, whereby business income generated by the S corporation flows directly through to the shareholder for taxation purposes. Applying *Dupee,* we find appellants' first proposition meritless.

{¶ 8} Appellants also argue that taxation of nonresident shareholders of an S corporation violates their due process rights because they do not have a "substantial nexus" with Ohio. Initially, we note that appellants misstate the test for determining whether due process has been violated. Substantial nexus is the test used to determine whether a tax violates the Commerce Clause. See *Quill Corp. v. North Dakota* (1992), 504 U.S. 298, 313, 112 S.Ct. 1904, 1913-1914, 119 L.Ed.2d 91, 107. The Due Process Clause "requires some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax." *Miller Bros. Co. v. Maryland* (1954), 347 U.S. 340, 344-345, 74 S.Ct. 535, 539, 98 L.Ed. 744, 748. In other words, a state must have minimum contacts with the entity in order to tax it. In assessing whether taxation comports with due process, this court, in *Couchot v. State Lottery Comm.* (1996), 74 Ohio St.3d 417, 422, 659 N.E.2d 1225, 1228, stated:

"The determination of state taxing power generally involves the flexible application of several factors, such as the state's power, dominion, or control over that which it seeks to tax; the *benefits*, *protections*, and *opportunities* afforded by the state; and the social and governmental costs incurred by the state." (Emphasis added.)

{¶ 9} Appellants have admitted that their S corporations conducted business in Ohio. Thus, it is evident that the S corporations have utilized the protections and benefits of Ohio by carrying on business here. This income was then passed through

to the appellants as personal income. Thus, the appellants, through their S corporations, have also availed themselves of Ohio's benefits, protections, and opportunities by earning income in Ohio through their respective S corporations. We find that this provides Ohio the "minimum contacts" with the appellants to justify taxing appellants on their distributive share of income. Therefore, we find that appellants' second proposition is not well taken.

{¶ 10} Appellants argue that taxation of the distributive share of their income violates Section 381, Title 15, U.S.Code. Specifically, appellants claim that they did not personally conduct any business activity in Ohio that rose to the level of solicitation of orders as set out in Section 381, Title 15.

{¶ 11} The impetus for the promulgation of Section 381, Title 15, was the United States Supreme Court's decision in *Northwestern States Portland Cement Co. v. Minnesota* (1959), 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421. *Heublein, Inc. v. South Carolina Tax Comm.* (1972), 409 U.S. 275, 281, 93 S.Ct. 483, 487-488, 34 L.Ed.2d 472, 478. In *Northwestern States,* the United States Supreme Court rejected Due Process and Commerce Clause challenges to Minnesota's imposition of an apportioned tax on the net income of an Iowa corporation's profits whose only activity in Minnesota consisted of solicitation of orders for the sale of its products. *Northwestern States* at 461-465, 79 S.Ct. at 364-366, 3 L.Ed.2d at 429-431. Concerned that *Northwestern States* could be read to allow a state to tax an out-of-state company for sales where the sole activity of the out-of-state company in the taxing state was solicitation of orders, Congress enacted Section 381, Title 15. *Heublein,* 409 U.S. at 280, 93 S.Ct. at 487, 34 L.Ed.2d at 477. The Supreme Court interpreted Section 381, Title 15, to preclude a state from taxing an out-of-state company's profits where the out-of-state company's only contact with the taxing state was the "solicitation of orders," or the out-of-state company's activity (in addition to solicitation of orders) in the taxing state was *de minimis*. *Wisconsin Dept. of Revenue v. Wrigley* (1992), 505 U.S. 214, 223-232, 112 S.Ct. 2447, 2453-

2458, 120 L.Ed.2d 174, 186-191. The court in *Wrigley* held that the phrase "solicitation of orders" as used in Section 381, Title 15, "embraces request-related activity that is not even, strictly speaking, essential, or else it would not cover salesmen's driving on the State's roads, spending the night in the State's hotels, or displaying within the State samples of their product." *Id.* at 226, 112 S.Ct. at 2455, 120 L.Ed.2d at 187. The court in *Wrigley* also stated, "whether in-state activity other than 'solicitation of orders' is sufficiently *de minimis* to avoid loss of tax immunity conferred by § 381 depends upon whether that activity establishes a nontrivial additional connection with the taxing State." *Id.* at 232, 112 S.Ct. at 2458, 120 L.Ed.2d at 191.

{¶ 12} In this case, appellants claim that they did not *personally* participate in any business activities in Ohio. S corporations are pass-through entities for purpose of taxation but are still corporations from a legal perspective. A corporation is an entity separate and apart from the individuals who compose it; it is a legal fiction for the *purpose of doing business. Ohio Bur. of Workers' Comp. v. Widenmeyer Elec. Co.* (1991), 72 Ohio App.3d 100, 105, 593 N.E.2d 468, 471. Thus, it is S *corporations' business activity* in Ohio that is dispositive as to whether Section 381, Title 15, precludes taxation of the S corporations, not the appellants' *personal* activity.

{¶ 13} The only evidence relating to the S corporations' business activities in Ohio is found in stipulations of fact, which indicate that S corporations "conducted business activity in Ohio that was *not limited* to * * * solicitation of orders within Ohio * * *." (Emphasis added.) In other words, the S corporations conducted business activities beyond mere solicitation so as to remove them from any immunity from taxation by Ohio pursuant to Section 381, Title 15. Thus, Section 381, Title 15, is not a bar to taxation of appellants in this case.

{¶ 14} The appellants argue that the distributive share of an S corporation's income constitutes "nonbusiness" income to the shareholder pursuant to R.C.

5747.01(C). As to nonbusiness income, appellants claim that this income should not be apportioned to Ohio, since appellants are not domiciled in Ohio pursuant to R.C. 5747.20(B)(6).

{¶ 15} Appellants' argument is flawed because it assumes that distributive income from an S corporation is nonbusiness income. This characterization ignores the true nature of the income that appellants receive from their S corporations. Section 1366(b), Title 26, U.S.Code indicates that the character of the item distributed to a shareholder is to be determined as if the item were realized from the source from which the corporation realized the item. Thus, business income generated by an S corporation retains its status as business income as it passes through to the shareholders. As business income, it is apportioned under R.C. 5747.21 for taxation in Ohio. Thus, we reject appellants' fourth proposition of law.

{¶ 16} Finally, appellants argue that because R.C. 5747.22 did not refer to S corporations as being pass-through entities until after the disputed tax years, the Tax Commissioner had no authority to tax appellants' distributive income from the S corporations.

{¶ 17} Appellants' argument ignores the fact that a taxpayer's income tax liability is measured on the basis of the taxpayer's adjusted gross income. *Dery v. Lindley* (1979), 57 Ohio St.2d 5, 6, 11 O.O.3d 70, 71, 385 N.E.2d 291, 292. R.C. 5747.01(A) defines "adjusted gross income." Former R.C. 5747.01(A) originally contained language that excluded S corporation income from adjusted gross income. 134 Ohio Laws, Part II, 1581, 1582. S corporation income was taxed through an excise tax pursuant to former R.C. 5733.01(B). 134 Ohio Laws, Part II, 1550. However, in 1985, prior to the disputed tax years, the General Assembly amended R.C. 5733.01 to remove the excise tax from S corporation income. 141 Ohio Laws, Part I, 310, 311. In the same Act, the General Assembly also deleted the language from R.C. 5747.01 that excluded S corporation income from adjusted gross income. *Id*. at 311. The Legislative Service Commission stated that the Act

(Am.Sub.S.B. No. 121) "exempts S corporations from the franchise tax and requires shareholders to include S corporation income * * * in their Ohio AGI." Ohio Legislative Service Commission Summary of Enactments (Jan.-July 1985) 146. In other words, Ohio recognized that a Subchapter S corporation election causes the S corporation's income to pass through to the shareholders. Thus, subsequent to 1985, which is prior to the disputed tax years, the commissioner had authority to tax appellants on their distributive income that was generated by their S corporations.

{¶ 18} We acknowledge that during the disputed tax years, R.C. 5747.22 named only partnerships as having income passed through to partners for tax purposes. We further acknowledge that it was not until 1997 that R.C. 5747.22 was amended to include the phrase "pass-through entity." However, contrary to appellants' assertion, we find that R.C. 5747.22 does not define how S corporation income should be taxed.

{¶ 19} Unlike R.C. 5747.01, which defines a basis for taxation, including the ability to elect S corporation status, R.C. 5747.22 defines how income and deductions are apportioned. Thus, the General Assembly's 1997 amendment of R.C. 5747.22 in Am.Sub.H.B. No. 215 to add the phrase "pass-through entity" was merely a codification of existing law as to how an S corporation's income should be allocated and apportioned. See, *e.g., NLO, Inc. v. Limbach* (1993), 66 Ohio St.3d 389, 393-394, 613 N.E.2d 193, 197. Therefore, we find that appellants' fifth proposition of law is meritless.

{¶ 20} For all the aforementioned reasons, we find that the decisions of the BTA are neither unlawful nor unreasonable. Accordingly, we affirm the decisions of the BTA.

*Decisions affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

_____