**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Giddens v. Testa,* **Slip Opinion No. 2016-Ohio-8412.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-8412

GIDDENS ET AL., APPELLANTS, *v.* TESTA, TAX COMMR., APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Giddens v. Testa,* Slip Opinion No. 2016-Ohio-8412.]**

*Taxation—Treatment of distribution of C corporation earnings generated before S corporation pass-through selection—Tax commissioner's denial of nonresident tax credit reversed.*

(No. 2014-2012—Submitted August 16, 2016—Decided December 28, 2016.)

APPEAL from the Board of Tax Appeals, No. 2012-359.

———————————

**Per Curiam.**

{¶ 1} This is an appeal from a decision of the Board of Tax Appeals ("BTA"), which affirmed the assessment of the appellee, tax commissioner, of Ohio individual income tax against appellants, Ernest and Louann Giddens, for tax year 2008. The Giddenses resided in Missouri but paid Ohio income tax as owners, through grantor trusts, of shares in a corporation that did some of its business in

Ohio. In 2008, that corporation was an "S corporation," meaning that its income passed through for tax purposes.

{¶ 2} The part of the assessment at issue here involves the tax commissioner's reduction of the amount of a tax credit, the "nonresident credit," that relates to a distribution from the corporation. The Giddenses allocated the distribution outside Ohio on the grounds that it constituted a dividend that was "nonbusiness income" allocable to Missouri, their place of domicile.

{¶ 3} The tax commissioner, however, proceeded on the theory that the distribution should be treated as "business income," and he deemed a portion of it to be taxable by Ohio based on the proportion of the corporation's business in Ohio. The BTA affirmed the assessment, and the Giddenses have appealed.

{¶ 4} We conclude that the taxpayers properly treated the income at issue as nonbusiness income rather than business income. We therefore reverse the decision of the BTA with respect to dividend allocation.

## FACTUAL BACKGROUND

{¶ 5} Redneck, Inc. is a wholesale supplier of equipment for trailer parks, including running gear, axles, springs, hitches, and jacks. In 2008, Redneck's shareholders, Ernest and Louann Giddens, paid income tax to Ohio on the operational income generated by Redneck because Redneck was a pass-through Subchapter S corporation. *See Ardire v. Tracy*, 77 Ohio St.3d 409, 674 N.E.2d 1155 (1997), fn. 1 ("For tax purposes, a Subchapter S corporation differs significantly from a normal corporation in that the profits generated through the S corporation are taxed as personal income to the shareholders"). Each had a grantor trust (i.e., a trust over which the grantor retained extensive power, such as complete revocability) that owned one-half of Redneck, and because the trust in each instance was a "grantor trust" for federal tax purposes, the trust itself—as well as the S corporation—was a pass-through for income-tax purposes. *See Knust v. Wilkins*, 111 Ohio St.3d 331, 2006-Ohio-5791, 856 N.E.2d 243, ¶ 23 (" 'Basically, therefore,

[a grantor] trust is completely ignored for income tax purposes' "), quoting Ferguson, Freeland & Ascher, *Federal Income Taxation of Estates, Trusts, and Beneficiaries* Section 10.05[C], at 10-25 to 1-26 (3d Ed.2000). (Brackets sic.) Thus, in 2008, Redneck income would be reflected on the joint return of the Giddenses.

{¶ 6} However, during 2008, Redneck distributed $74,099,830 to its two shareholders through their trusts. This distribution was of earnings and profits recorded when Redneck was a C corporation—before the Giddenses elected pass-through treatment for Redneck. September 1, 2004, was the effective date of the pass-through election.

{¶ 7} The Giddenses treated the distribution as a dividend, and as nonresidents of Ohio, they allocated the dividend entirely outside this state by claiming a full nonresident credit to offset all Ohio income tax associated with the dividend. On audit, the tax commissioner amended the return and assessed a deficiency.

{¶ 8} The main item in the assessment, and the only item at issue in this appeal, is the dividend.[1] The tax commissioner treated the dividend as business income rather than as nonbusiness income, and as a result, the commissioner applied Redneck's apportionment factors to the dividend—that is, 3.9 percent of the dividend was treated as Ohio income. The total amount of tax deficiency assessed was $182,809.89, most of which was attributable to the apportionment of the dividend.

{¶ 9} When the Giddenses petitioned for reassessment, the tax commissioner's final determination upheld the assessment, relying with respect to

---

[1] The other adjustments consisted of treating interest income and certain wages as business income. The Giddenses' merit brief unequivocally states that the "sole issue in this case is the Tax Commissioner's improper characterization of a dividend * * *." Accordingly, the Giddenses have waived or abandoned their objections to any other aspect of the assessment. *E. Liverpool v. Columbiana Cty. Budget Comm.*, 116 Ohio St.3d 1201, 2007-Ohio-5505, 876 N.E.2d 575, ¶ 3.

the dividend issue on this court's pronouncement in *Agley v. Tracy*, 87 Ohio St.3d 265, 268, 719 N.E.2d 951 (1999) that "the character of the item distributed to a shareholder [of an S corporation] is to be determined as if the item were realized from the source from which the corporation realized the item."

{¶ 10} The Giddenses appealed to the BTA, which held a hearing at which Ernest Giddens testified. The tax commissioner called a supervising tax agent as a witness, and both parties submitted exhibits.

{¶ 11} In its decision, the BTA relied on the same *Agley* pronouncement that the tax commissioner had cited. BTA No. 2012-359, 2014 Ohio Tax LEXIS 4783, 5 (Oct. 20, 2014). The BTA held that because the S election was in place in 2008, the 2008 dividend was to be treated as business income.

## ANALYSIS

{¶ 12} In this appeal, we confront a question of how to apply the statutory provisions relating to the income taxation of dividends and business income to the Giddens's 2008 distribution. Because this presents primarily a question of statutory construction, we review the BTA's decision de novo, without deference. *Akron Centre Plaza, L.L.C. v. Summit Cty. Bd. of Revision*, 128 Ohio St.3d 145, 2010-Ohio-5035, 942 N.E.2d 1054, ¶ 10.

1. *The Giddenses followed the usual treatment of dividends and distributions as nonbusiness income that is allocated entirely to their Missouri residence*

{¶ 13} R.C. 5747.02(A) imposes Ohio income tax on "every individual * * * residing in or earning or receiving income in this state." As a general matter, all income of Ohio residents is taxable wherever earned or received, subject to a "resident credit" at R.C. 5747.05(A) for amounts of state income tax paid to another state in which the income was earned or received. *Cunningham v. Testa*, 144 Ohio St.3d 40, 2015-Ohio-2744, 40 N.E.3d 1096, ¶ 10. As for nonresidents, only that portion of their income that is "earned or received in this state" is taxable. *Id.* The

4

nonresident credit, R.C. 5747.05(A), allows the nonresident who must file an Ohio return to remove all Ohio income tax that is associated with any income that was not earned or received in this state. *See Krehnbrink v. Testa*, __ Ohio St.3d __, 2016-Ohio-3391, __ N.E.3d __, ¶ 21, 23.

**{¶ 14}** Against this legal backdrop, the Giddenses' joint return for 2008 reflected a nonresident credit that subtracted all Ohio tax pertaining to the Redneck dividend. In doing so, they relied on R.C. 5747.05(A)(1)'s provision of a credit equal to the "tax otherwise due * * * on such portion of the combined adjusted gross income and business income of any nonresident taxpayer that is not allocable or apportionable to this state pursuant to sections 5747.20 to 5747.23 of the Revised Code." Next, the Giddenses looked to R.C. 5747.20(B)(6), which provides that, among other types of income, a nonresident's "dividends and distributions * * * shall not be allocated to this state unless the taxpayer's domicile was in this state at the time such income was paid or accrued." In opposing the tax commissioner's assessment, the Giddenses contend that the dividend at issue here falls squarely under R.C. 5747.20(B)(6).

2. *The tax commissioner treated the dividend as though it were a distributive share of Redneck's current income*

**{¶ 15}** The tax commissioner does not contest the general validity of the proposition that dividends and distributions are nonbusiness income. Instead, the tax commissioner asserts that because Redneck was an S corporation when the dividend was declared, the dividend needs to be treated as though it were distributive-share income of the S corporation. To explain the point, it is necessary to discuss the difference between S corporations and C corporations.

**{¶ 16}** Under the conventional tax structure, a corporation pays income tax on its earnings; later, if retained earnings are paid out as a dividend, the shareholder must pay tax on the dividend. That arrangement can be referred to as the "C corp" situation, after Subchapter C of the Internal Revenue Code ("IRC").

{¶ 17} By electing pass-through treatment under IRC Subchapter S, however, shareholders can avoid the two levels of taxation. The "largest differentiator between an S corporation and a C corporation is the fact that income of the S corporation is generally not taxed at the corporate level." Bloomberg BNA Tax and Accounting Center, U.S. Income Portfolios ("BNA") 732-1st, S Corporations: Shareholder Tax Issues, Section I.A. Instead, "all items of income, deduction, loss and credit recognized at the corporate level are passed through to the S corporation shareholders," who are "taxed on their allocable share of the income even if the corporation does not make distributions." *Id.*

{¶ 18} The income from an S corporation passed through to the individual shareholder is often referred to as the shareholder's "distributive share" of the corporate income, even though it is taxed as pass-through income and the associated tax liability does not depend on any actual distribution of the income to the taxpayer. *See Dupee v. Tracy*, 85 Ohio St.3d 350, 351, 708 N.E.2d 698 (1999) (deciding that "the distributive share income nonresident shareholders of an Ohio S corporation receive and report as part of their federal adjusted gross income is subject to Ohio personal income tax"). After corporate earnings have accrued and have been taxed to the shareholder as his or her distributive share, "for the most part, S corporations can distribute S corporation earnings tax free. The taxation of S corporation distributions can differ if the S corporation has accumulated earnings and profits (E&P)." BNA 731-3d: S Corporations: Corporate Tax Issues, Section II.

{¶ 19} As already noted, we have recognized and endorsed the pass-through of distributive-share income under the Ohio income tax for both Ohio residents and nonresidents, noting that an S corporation's "profits * * * are taxed as personal income to the shareholders." *Ardire*, 77 Ohio St.3d 409, 674 N.E.2d 1155, fn. 1, (Ohio residents); *Dupee* at 352 (the "character of a shareholder's S corporation income remains the same for residents and nonresidents"). We have also endorsed

for Ohio tax-law purposes the proposition derived from federal law that the character of the distributive-share income as business or nonbusiness income depends upon viewing how the income arose from the standpoint of the corporation itself, rather than the shareholder. That is, the business versus nonbusiness character "is to be determined as if the item were realized from the source from which the corporation realized the item." *Agley*, 87 Ohio St.3d at 268, 719 N.E.2d 951; *see also Kemppel v. Zaino*, 91 Ohio St.3d 420, 421, 746 N.E.2d 1073 (2001) ("Because the Kemppels are shareholders in a subchapter S corporation, the character of the income attributed to them from [the S corporation] is determined as though they had received it directly from the same source as [the S corporation]").

{¶ 20} What the tax commissioner did in this case is apply the proposition just quoted to the dividend income received by the Giddenses here. He apportioned the income to Ohio based on the Ohio apportionment factor of Redneck itself, which was 3.9 percent. We disagree with this approach for the reasons that follow.

3. *For tax purposes, a distribution paid out of accumulated C corp earnings is a dividend rather than distributive share*

{¶ 21} As discussed, when the Subchapter S election applies, the shareholder pays income tax when the income accrues to the corporation; the subsequent distribution is an event that usually does not trigger its own tax liability. What happens instead is an adjustment to the shareholder's basis in the shares of the corporation, and the income that arose as corporate earnings is held, for tax purposes, in what is called an "accumulated adjustments account," which is "generally the accumulation of previously taxed, but undistributed, earnings of the S corporation." BNA 731-3d: S Corporations: Corporate Tax Issues, Section II.C.1.

{¶ 22} By contrast, a distribution of earnings and profits that accrued to a C corporation that later became an S corporation is subject to the rule that "[a]ny

amount distributed in excess of the [accumulated adjustments account] will generally be treated as a dividend to the extent of the corporation's accumulated E & P" from its C corporation days. *Id*. at II.B.3

{¶ 23} That is what occurred here. The Giddenses through their trusts received a dividend from Redneck traceable to earnings that accrued before the S election in 2004. That dividend was taxable as a dividend at the federal and potentially the state level.

{¶ 24} In disputing the tax commissioner's treatment of the dividend as business income, the Giddenses do not disagree that the ultimate source of their dividend income (though once removed) lay in accumulated earnings of Redneck. Nor does their argument contradict the proposition that any 2008 distributive-share income derived from Redneck's operations that year should be apportioned to Ohio as business income. Instead, the Giddenses insist on a distinction between distributive-share income that is taxed on a pass-through basis, and a later dividend paid out of "accumulated earnings and profits" that is subjected to income taxation. The latter, according the Giddenses, is not business income but is taxed to them solely by virtue of its having been distributed by the corporation.

{¶ 25} We agree with the Giddenses' interpretation and conclude that the dividend was nonbusiness income subject to allocation under R.C. 5747.20(B)(6). Crucial to the analysis is the nature of the event that triggered the income-tax liability—here, the declaration of the dividend. That contrasts to the liability of the Giddenses as S-corporation shareholders when they report their distributive share of the corporation's current income on their individual income-tax return—in that situation, the event that triggers the tax liability is the accrual of income to the corporation by virtue of its business activity.

*4. Neither the principle of* Agley *regarding the characterization of income, nor its codification at R.C. 5747.213, applies in this situation*

{¶ 26} In *Agley*, 87 Ohio St.3d 265, 719 N.E.2d 951, we confronted the taxpayers' contention that an S corporation's income that passed through to nonresident shareholders should be classified as nonbusiness income by analogy to a dividend or distribution. We held that "the character of the item distributed to a shareholder [of an S corporation] is to be determined as if the item were realized from the source from which the corporation realized the item." *Id*. at 268.

{¶ 27} The tax commissioner focuses on "item distributed," contends that the dividend issued to the Giddenses' trusts by Redneck is an "item distributed," and then points to the origin of that dividend in Redneck's earnings during earlier years. Because those original earnings were business income to the corporation when earned, the dividend paid out of such earnings must also be business income, according to the tax commissioner.

{¶ 28} Although this argument may appear plausible, that appearance arises from our misstatement in *Agley*. We used the term "item distributed" in *Agley*, even though no actual distribution of corporate earnings was at issue because the income was a distributive share. *Id*. at 268. We should have said that the character of the S corporation shareholder's *distributive share* of the corporation's own income is to be determined as if that income had been realized by the shareholder from the source from which the corporation realized the income.

{¶ 29} Once the correction is made, the tax commissioner's argument evaporates, because the income at issue in this case is not the Giddenses' distributive share of Redneck's current income. Instead, the income subject to taxation here is a dividend paid out of earnings that accrued to the corporation during earlier years.

{¶ 30} The tax commissioner also cites R.C. 5747.231, a statute enacted in 2002 that essentially codifies the *Agley* holding. R.C. 5747.231 states:

> [E]ach person shall include in that person's items of business income, nonbusiness income, adjusted qualifying amounts, allocable income or loss, apportionable income or loss, property, compensation, and sales, the person's entire distributive share or proportionate share of the items of business income, nonbusiness income, adjusted qualifying amounts, allocable income or loss, apportionable income or loss, property, compensation, and sales of any pass-through entity in which the person has a direct or indirect ownership interest at any time during the person's taxable year. * * * These items shall be in the same form as was recognized by the pass-through entity.

{¶ 31} The commissioner interprets this statute to apply to the Giddenses' 2008 dividend by highlighting the taxpayer's "proportionate share of the items of business income of the pass-through entity," asserting that the dividend somehow qualifies as a "proportionate share" of Redneck's "business income." But contrary to the commissioner's theory, the income being taxed in this case is not a "proportionate share" of Redneck's own "business income." Instead, the income at issue here is a dividend paid out to the Giddenses from previously accumulated corporate earnings.

{¶ 32} It is worth reiterating that the material distinction is the event that triggers a tax liability for the individual income taxpayer: it is not Redneck's business activity that made the dividend appear as a taxable item on the Giddenses' return. It was the declaration of the dividend that did so.

{¶ 33} Because the *Agley* principle does not apply, the dividend constitutes nonbusiness income to be allocated entirely outside Ohio. The assessment must

therefore be overturned to the extent that it reflects the tax commissioner's denial of nonresident tax credit in relation to the dividend income.

## CONCLUSION

**{¶ 34}** For the foregoing reasons, we reverse the decision of the BTA to the extent that it upheld the tax commissioner's assessment in relation to the amount of credit associated with the dividend income. In all other respects, the BTA decision remains in force. We remand this cause to the tax commissioner with instruction that he take appropriate steps to effectuate this decision.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Baker & Hostetler, L.L.P., and Edward J. Bernert, for appellant.

Michael DeWine, Attorney General, and Barton A. Hubbard, Assistant Attorney General, for appellee.

_____