[Cite as *Scrimizzi v. Scrimizzi*, 2019-Ohio-2793.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| DIANA L. SCRIMIZZI, | : | |
| Appellee, | : | CASE NO. CA2018-11-131 |
| | : | O P I N I O N |
| - vs - | | 7/8/2019 |
| | : | |
| GREGORY M. SCRIMIZZI, | : | |
| Appellant. | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 15DR38238

John D. Smith Co., LPA, Andrew P. Meier, 140 North Main Street, Suite B, Springboro, Ohio 45066, for appellee

The Law Offices of Jason A. Showen, LLC, Jason A. Showen, 324 East Warren Street, Lebanon, Ohio 45036, for appellant

**M. POWELL, J.**

{¶ 1} Appellant, Gregory Scrimizzi ("Husband"), appeals a decision of the Warren County Court of Common Pleas, Domestic Relations Division, denying his Civ.R. 60(B) motion regarding the allocation of a tax liability.

{¶ 2} Husband and appellee, Diana Scrimizzi ("Wife"), were married in 1977.

During their marriage, the parties were the sole shareholders of Scrimizzi Properties, Inc. Scrimizzi Properties is engaged in the business of purchasing, developing, leasing, and selling real property. The company is an S corporation and thus a "pass-through" entity whereby the income and losses of the business are passed through to the shareholders. *Dupee v. Tracy*, 85 Ohio St.3d 350, 351 (1999). An S corporation files an informational tax return and issues a K-1 form to its shareholders reflecting their share of the corporate income.[1] As a result, the shareholders pay federal income taxes on corporate earnings together with any individual taxable income they may have. *Wolf v. Wolf*, 12th Dist. Warren No. CA2008-03-045, 2009-Ohio-1845, ¶ 34.

{¶ 3} Wife filed a divorce complaint in August 2015. In early 2017, the parties discovered there was a potential issue regarding the Scrimizzi Properties' 2015 original tax return. Specifically, on February 16, 2017, Husband received an email from Alan Duvall, the financial expert hired by Wife to assist her in the divorce proceedings. Duvall advised Husband that

> it appears there was a miscommunication between [Husband] and the accountants, which resulted in an overstatement of bank debt by about $192,000. As a result, it initially appears a tax return interest expense was overstated by $81,000 and cleaning and maintenance expenses were overstated by one hundred and eleven. In conclusion, the Scrimizzi Properties 2015 tax return will most likely have to be amended to reverse the original $100,000 loss and report an approximate $90,000 tax income. Obviously back taxes will be due.

{¶ 4} Soon thereafter, Husband spoke with Rebecca Clawson about Duvall's email. Clawson is a tax manager at the accounting firm Wulff and Associates. The record indicates

---

1. "'K-1 income' refers to ordinary income reported on IRS Schedule K, Line 1, of Form 1120S on the income tax return of an S Corporation." *Hutta v. Hutta*, 5th Dist. Delaware No. 10CAF040031, 2011-Ohio-3041, ¶ 14, fn.1. "K-1s are IRS forms that 'S' corporations issue to their shareholders to pass the income, credits and deductions of the corporation on to the shareholders." *Mahler v. BAGS, Inc.*, 161 Ohio App.3d 266, 2005-Ohio-2685, ¶ 14 (6th Dist.).

she prepared Scrimizzi Properties' tax returns for several years until sometime in 2017 or 2018. Husband and his attorney subsequently met with Duvall on February 27, 2017. Duvall testified "there was a verbal explanation in depth into * * * the tax debt at that time." Husband testified he did not remember Duvall explaining what the issues were regarding the tax debt. Husband further received an email from Wulff and Associates regarding the tax issue on February 27, 2017.

{¶ 5} A hearing on the parties' divorce was scheduled for March 6 and 7, 2017. However, on the first day of the hearing, the parties advised the trial court that they had reached "a full resolution of all of the issues before the Court." The parties' agreement was then read into the record, pending preparation of a divorce decree. In particular, the agreement provided that Husband was entitled to all assets and was responsible for "any and all debts associated with" Scrimizzi Properties, and that he "shall indemnify wife and hold her harmless as to any and all debts associated with the business." The agreement further provided that the parties were required to file their "2016 individual personal corporate taxes separate from one another," and that "each shall be totally responsible for any and all debt associated with the same[.]"

{¶ 6} On May 5, 2017, Wulff and Associates prepared an amended 2015 tax return for Scrimizzi Properties and an accompanying amended 2015 joint tax return for the parties showing a $14,689 tax liability. Having lost confidence in Wulff and Associates, Husband retained Larry Warner as his accountant. In the fall of 2017, Warner prepared an amended 2015 tax return for Scrimizzi Properties and an accompanying amended 2015 joint tax return for the parties showing a $10,901 tax liability.

{¶ 7} On May 15, 2017, consistent with the trial court's local rules, Husband filed a notice of presentation of entry, requesting that the trial court approve a proposed divorce decree and entry attached to the notice unless Wife filed objections to the proposed decree

- 3 -

within 14 days. Wife timely filed objections to Husband's proposed decree and presented her own proposed divorce decree and entry. The trial court subsequently scheduled a hearing on Wife's objections for June 7, 2017. The record does not indicate whether the hearing was held.

{¶ 8} On June 8, 2017, Husband filed a combined objection to the proposed final divorce decree and a motion for relief from judgment pursuant to Civ.R. 60(B)(1) and (2).[2] Husband claimed surprise at the 2015 tax liability and asserted that the tax liability constituted "newly discovered evidence." He further asserted that the tax liability "was not known, addressed or allocated on the record" on March 6, 2017, "nor was it ever disclosed and/or calculated by either party prior to the reading of the parties' agreement into the record on March 6, 2017." Consequently, Husband moved the trial court "to grant [him] Civ.R. 60(B) relief by addressing and equally allocating the outstanding newly discovered * * * 2015 personal debt owed by the parties[.]" Husband's motion included a notice of hearing set for July 10, 2017.

{¶ 9} The combined objection/Civ.R. 60(B) motion reflects that before Husband filed his motion, the tax liability issue was discussed with the trial court which, in turn, "ha[d] instructed [Husband's] counsel to file any motion, relating to the [2015 tax liability], only after the filing of the Final Decree of Divorce in this matter." Husband's combined objection/Civ.R. 60(B) motion was plainly filed before the final divorce decree was journalized. On July 10, 2017, the date set for a pretrial hearing on Husband's Civ.R. 60(B) motion, the trial court scheduled a "MOTION HEARING" for October 12, 2017. The hearing was subsequently rescheduled twice by magistrate's orders and ultimately held on March

---

2. For clarity purposes, the "objection" filed by Husband was not an "objection" to a magistrate's decision pursuant to Civ.R. 53(D)(3) but an "objection" to the proposed divorce decree and entry pursuant to Loc.R. 6.1(B) of the Warren County Common Pleas Court, Domestic Relations Division. Loc.R. 6.1(B) is discussed in detail below.

5, 2018.

{¶ 10} The final divorce decree ("Decree") was journalized on June 12, 2017, prior to any rulings on Husband's combined objection/Civ.R. 60(B) motion. A notice of final appealable order was issued the same day. Husband did not appeal the Decree.

{¶ 11} Consistent with the parties' agreement read into the record on March 6, 2017, Article 3 of the Decree allocated Scrimizzi Properties as follows:

> Husband shall be entitled to retain the business Scrimizzi Properties Inc. along with any assets/debts/property associated with the same, free and clear of all claims of Wife. *Husband shall be solely responsible for all debts associated with the same, including all tax debt, and shall hold Wife harmless and indemnify her on the same.* Husband shall be solely entitled to any equity and/or income that may be associated with the same. Wife shall execute any documents necessary, if any, to remove her as an officer or otherwise from Scrimizzi Properties Inc., upon presentation of the same. The Court shall retain jurisdiction over this matter in order to effectuate the intent of the parties.

(Emphasis added.) We note that the provision allocating Scrimizzi Properties to Husband in Husband's proposed divorce decree was identical to the provision above, including the phrase "including all tax debt." By contrast, Wife's proposed divorce decree did not include the phrase "including all tax debt."

{¶ 12} Article 5 of the Decree further provided, "The parties have no joint debts, other than those set forth above, and each party shall be solely responsible for any debt in their individual names, free and clear of any claims of the other."

{¶ 13} Wife moved to dismiss Husband's combined objection/Civ.R. 60(B) motion, arguing that prior to March 6, 2017, "the parties were well aware there were past taxes due and owing, regardless of whether the exact amount was known," because they had received notice in February 2017 that the Scrimizzi Properties' 2015 original tax return had been incorrectly filed "resulting in the parties owing taxes, although an exact amount was not yet

known."  In a memorandum in opposition, Husband reiterated he was unaware of "any actual tax deficiency owed" regarding the 2015 tax liability.  He further asserted that the Decree failed to address the 2015 tax liability and that unless the trial court addressed "this new tax debt, * * * the Final Decree is not a final order[.]"

{¶ 14} A hearing on the parties' foregoing motions and various other motions was held before a magistrate on March 5, 2018.  Husband sought an order that Wife be allocated half of the 2015 tax liability.  The parties, Clawson, and Duvall testified at the hearing.

{¶ 15} By magistrate's decision filed on July 3, 2018, the magistrate denied Husband's Civ.R. 60(B) motion.  The magistrate rejected Husband's claims of surprise and newly discovered evidence, finding that "Husband was clearly on notice of a potential tax issue regarding the 2015 taxes associated with Scrimizzi Properties at the time he participated in reading the agreement on the record" on March 6, 2017.  In support of his finding, the magistrate cited Husband's testimony that he had received Duvall's email alerting him about a potential issue with the 2015 tax debt for Scrimizzi Properties on February 16, 2017, and that he had consequently talked to Clawson on the phone prior to the March 6, 2017 hearing.  The magistrate further found that although Husband "may not have known the exact figure that would be owed[,] he definitely was aware of a potential issue.  If he wanted to investigate the situation further he could have, but he chose not to."  The magistrate's decision did not specifically address Husband's objection to the proposed divorce decree but stated, "All pending Motions or Branches of Motions not herein addressed are hereby DENIED."

{¶ 16} Husband filed objections to the magistrate's decision.  Specifically, Husband challenged the magistrate's failure to (1) address his objection to the proposed divorce decree, (2) allocate the parties' personal 2015 tax debt incurred during their marriage but not addressed and/or allocated in the Decree, (3) allocate the parties' "taxes now owing

- 6 -

resulting from the parties' personal pass-through income received during their marriage in 2015 and before," and (4) allocate "the parties' personal pass-through income tax consequences for the years after 2015[.]"

{¶ 17} On October 9, 2018, the trial court overruled Husband's objections and adopted the magistrate's decision. The trial court overruled the first objection on the ground Husband's objection to the proposed divorce decree was addressed by the magistrate as a Civ.R. 60(B) motion; furthermore Husband's remedy was to appeal the Decree but he failed to do so. The trial court further found that Husband "had an opportunity at or before the March 6, 2017 hearing to express doubt regarding the finality of past tax returns, and ask for those matters to be settled. He failed to do that."

{¶ 18} The trial court overruled the second objection on the ground the Decree unambiguously allocated all debts associated with Scrimizzi Properties to Husband, "including all tax debt," and therefore the 2015 tax liability. Consequently, the trial court found that Husband was "now solely responsible for any personal taxes that arise out of his sole ownership of Scrimizzi Properties."

{¶ 19} The trial court overruled the third and fourth objections on the ground that on March 6, 2017, "the date of the final divorce hearing, [Husband] agreed to pay the debts of the corporation, and * * * knew of potential back taxes at the time he reached that agreement. As a result, * * * [Husband] was [correctly] denied the opportunity to re-litigate an issue that could have and should have been litigated on or before the final hearing date."

{¶ 20} Husband now appeals, raising two assignments of error.

{¶ 21} Assignment of Error No. 1:

{¶ 22} THE TRIAL COURT ERRED IN FILING A FINAL DECREE OF DIVORCE WHEN ISSUES RELATING TO THE DIVISION OF PROPERTY WERE UNRESOLVED.

{¶ 23} Husband generally argues the trial court erred in filing the Decree. He

presents two issues for review.

{¶ 24} In his first issue for review, Husband argues the Decree is not a final appealable order under Civ.R. 75(F)(1) because it did not allocate a "significant marital debt," to wit the 2015 tax liability resulting from the Scrimizzi Properties' incorrect 2015 original tax return, as required under R.C. 3105.171(B). Husband asserts that this renders moot the magistrate's July 3, 2018 decision denying his combined objection/Civ.R. 60(B) motion.

{¶ 25} R.C. 3105.171(B) requires a trial court to divide the marital and separate property equitably between the spouses. "[D]ividing marital property requires the trial court to also divide marital debt." *Wolf*, 2009-Ohio-3687 at ¶ 23. Pursuant to Civ.R. 75(F)(1), a divorce decree that fails to resolve issues relating to property division is not a final order. *Reeves v. Reeves*, 12th Dist. Clermont No. CA2015-11-092, 2016-Ohio-4590, ¶ 11. "If, however, the decree resolves 'all the outstanding issues between the parties,' then it is a final appealable order." *Id.*, quoting *Merkle v. Merkle*, 5th Dist. Licking No. 13-CA-31, 2014-Ohio-81, ¶ 14.

{¶ 26} We find that the Decree did allocate the 2015 tax liability associated with Scrimizzi Properties in its property division when it provided in Article 3 that "Husband shall be entitled to retain the business Scrimizzi Properties Inc. along with any assets/debts/property associated with the same, free and clear of all claims of Wife. *Husband shall be solely responsible for all debts associated with the same, including all tax debt, and shall hold Wife harmless and indemnify her on the same.*" (Emphasis added.) As stated above, the foregoing language is identical to the language found in Husband's proposed divorce decree. Furthermore, the record plainly shows that prior to the March 6, 2017 reading of the parties' agreement into the record, Husband was on notice of a potential and likely significant tax issue regarding the Scrimizzi Properties' 2015 original tax return.

Yet, Husband failed to act upon this notice and instead chose to settle the divorce. The June 12, 2017 entry and Decree is therefore a final appealable order.

{¶ 27} In his second issue for review, Husband argues the trial court abused its discretion when it filed the Decree on June 12, 2017, without first addressing Husband's objection to the proposed divorce decree even though the objection was scheduled to be heard by the magistrate on July 10, 2017.

{¶ 28} Consistent with the trial court's local rules, Husband filed a notice of presentation of entry on May 15, 2017, requesting that the trial court approve a proposed divorce decree and entry attached to the notice. Wife timely filed objections to Husband's proposed decree and filed her own notice of presentation of entry on May 22, 2017. The trial court subsequently scheduled a hearing on Wife's objections for June 7, 2017. The record does not indicate whether the June 7, 2017 hearing was held. On June 8, 2017, Husband filed his combined objection/Civ.R. 60(B) motion. Husband's motion included a notice of hearing set for July 10, 2017. On June 12, 2017, the trial court filed the Decree.

{¶ 29} Loc.R. 6.1 of the Warren County Common Pleas Court, Domestic Relations Division, governs decrees and judgment entries in contested matters.[3] Loc.R. 6.1(B) sets forth the procedure for parties to object to proposed judgment entries and final decrees. It has no counterpart in the Ohio Rules of Civil Procedure or R.C. Chapter 3105. Loc.R. 6.1(B) provided that

> If the prevailing party prepares the necessary document as noted above but opposing counsel objects to the document as to form or because it does not accurately embody the court's decision, counsel shall indicate objections by affixing the words "subject to objection" under counsel's signature. Counsel shall then prepare his or her own entry, sign it and mail the original to the prevailing attorney along with the entry previously mailed to him or her by the prevailing attorney. Either or both counsel

---

3. The trial court's local rules were amended, effective February 1, 2018. Accordingly, for purposes of this appeal, we apply and refer to the trial court's local rules that were in effect before February 1, 2018.

shall then set the matter for a hearing on the entry as soon as possible. Each attorney must present a draft entry to the Judge/Magistrate at such hearing. The Judge/Magistrate shall approve and file one or the other of the submitted entries or shall prepare and file his/her own entry or decision.

{¶ 30} We find that the trial court was not required to hear Husband's objection before it filed the Decree. Although Loc.R. 6.1(B) set forth a procedure for objecting to proposed judgment entries and decrees prepared by counsel and submitted to the trial court and for subsequently setting the matter for a hearing, Loc.R. 6.1(D) provided that "[n]othing in this rule precludes the Judge/Magistrate from preparing and filing his or her own entry/decision *at any time.*" (Emphasis added.) Once the trial court journalized the Decree, Husband's pending objection became moot. The trial court had no authority to revisit its final appealable order, other than as provided by the Ohio Rules of Civil Procedure.

{¶ 31} Furthermore, a party has an automatic right to appeal a final divorce decree within 30 days after the decree is filed. We agree with the trial court that notwithstanding the written objection to the proposed divorce decree that Husband filed on June 8, 2017, if Husband had objections to the filing of the Decree, his remedy was to appeal to this court. Husband, however, did not file a direct appeal of the June 12, 2017 Decree.

{¶ 32} Husband's first assignment of error is accordingly overruled.

{¶ 33} Assignment of Error No. 2:

{¶ 34} THE TRIAL COURT ERRED IN MODIFYING THE PARTIES AGREEMENT.

{¶ 35} Husband generally argues that the trial court abused its discretion in allocating the 2015 tax liability associated with Scrimizzi Properties solely to Husband in violation of the unambiguous terms of the parties' agreement as read into the record and as incorporated in the Decree. Husband presents four issues for review. We will address the first and third issues together.

{¶ 36} In his first issue for review, Husband argues the trial court abused its

discretion when it characterized the 2015 tax liability as a tax debt solely allocated to Husband pursuant to the Decree. In his third issue for review, Husband argues that in allocating the 2015 tax liability solely to him, the trial court improperly modified the unambiguous terms of the parties' agreement. In support of these issues, Husband asserts that the Decree does not address the 2015 tax liability, and in fact, "[t]he parties agreed in their Final Decree of Divorce, to not address the allocation of the 2015 [tax liability] owed to the IRS," instead leaving the matter to be resolved between the parties and the IRS. Husband further asserts that his agreement to pay Scrimizzi Properties' tax debts related only to the corporation's annual real estate and city taxes.

{¶ 37} Article 3 of the Decree allocated Scrimizzi Properties as follows:

> Husband shall be entitled to retain the business Scrimizzi Properties Inc. along with any assets/debts/property associated with the same, free and clear of all claims of Wife. Husband shall be solely responsible for all debts associated with the same, including all tax debt, and shall hold Wife harmless and indemnify her on the same. Husband shall be solely entitled to any equity and/or income that may be associated with the same.

{¶ 38} Contrary to Husband's assertion, Article 3 does not limit his responsibility to specific types of tax debt and certainly does not limit his responsibility to only real estate and city taxes. Husband does not direct our attention to any portion of the record where his agreement to pay Scrimizzi Properties' tax debts is solely limited to real estate and city taxes. The testimony at the March 5, 2018 hearing does not support Husband's assertion. Husband simply testified that real estate taxes incurred by properties owned by Scrimizzi Properties were tax debts under the Decree, and that therefore he was solely responsible for those taxes. Husband never testified nor established that he was only responsible for real estate and city taxes pursuant to the Decree. Likewise, Clawson simply testified that as an S corporation, Scrimizzi Properties pays city taxes as those are not passed through to shareholders.

{¶ 39} Likewise, Husband does not direct our attention to any portion of the record where the parties agreed not to address the allocation of the 2015 tax liability either before the March 6, 2017 hearing or in the Decree, and to simply leave the matter to be resolved between the parties and the IRS. The testimony at the March 5, 2018 hearing does not support Husband's assertion. Furthermore, the Decree does not specifically refer to 2015 tax returns. The Decree only provides that "[t]he parties shall file separate tax returns in the year 2016 and each year thereafter. Each party * * * shall be solely responsible for any liability or solely entitled to any refund they may receive from those taxes."

{¶ 40} Article 3 of the Decree plainly provides that Husband is responsible for all debts associated with Scrimizzi Properties, including tax debts. As stated above, Scrimizzi Properties was an S corporation. It is well-established that an S corporation does not pay its own federal income tax. *Murphy-Green v. Green*, 12th Dist. Butler No. CA2001-07-171, 2002-Ohio-2180, ¶ 20. Thus, the income and losses of an S corporation are nontaxable to the corporation and are instead passed through to the shareholders on a pro rata basis and reported on the shareholders' individual tax returns. *Dupee*, 85 Ohio St.3d at 351; *Colby v. Colby*, 5th Dist. Delaware No. 15 CAF09 0968, 2016-Ohio-2903, ¶ 34. Accordingly, "all items of income, deduction, loss and credit recognized at the corporate level are passed through to the S corporation shareholders," whether the corporation's income is distributed or retained by the corporation. *Giddens v. Testa*, 148 Ohio St.3d 705, 2016-Ohio-8412, ¶ 17-18. Nevertheless, "it is still corporate income that is taxed[.]" *Wilhelm v. United States*, 257 F.Supp. 16, 19 (D.Wyo.1966).

{¶ 41} "Associated with" is defined as "closely connected, joined or united with another (as in interest, function, activity, or office)." *Webster's Third New International Dictionary* 132 (1993). The term is further defined as "related, connected, or combined together." *Merriam-Webster's Online: Dictionary and Thesaurus,*

https://www.merriamwebster.com/dictionary/associated (accessed June 25, 2019). As applied here, all debts associated with Scrimizzi Properties means all debts related to and/or resulting from Scrimizzi Properties.

{¶ 42} The 2015 tax liability is a direct result of the Scrimizzi Properties' incorrect 2015 original tax return regarding the corporation's earnings and losses. That is, the 2015 tax liability is a tax debt that originated with and flows from the real estate business of the corporation. As Husband agreed during the March 5, 2018 hearing, the tax debt would not exist if Scrimizzi Properties did not exist. The 2015 tax liability is plainly a tax debt associated with Scrimizzi Properties and as such, is solely allocated to Husband under the Decree.

{¶ 43} The trial court, therefore, did not abuse its discretion in finding that the 2015 tax liability is a tax debt associated with Scrimizzi Properties and in allocating the tax debt solely to Husband pursuant to Article 3 of the Decree.

{¶ 44} In his second issue for review, Husband argues the trial court erred in relying on a decision of the Fourth Appellate District when it overruled his objections to the magistrate's July 3, 2018 decision. The trial court overruled Husband's objections, finding that pursuant to the unambiguous language of the Decree, Husband was "solely responsible for all debts associated with Scrimizzi Properties, 'including all tax debts,'" and hence Husband was "now solely responsible for any personal taxes [arising] out of his sole ownership of Scrimizzi Properties." In support of its finding, the trial court relied in part upon *Enyart v. Taylor*, 4th Dist. Lawrence No. 13CA2, 2013-Ohio-4893.

{¶ 45} In *Enyart*, the husband and wife were the sole shareholders of an S corporation. Each year, the corporation reimbursed the K-1 tax liabilities to the shareholders. Pursuant to the parties' 2011 divorce decree, the husband agreed to buy the wife's shares in the corporation; further, the husband "shall be solely responsible for any

indebtedness of the company, holding [the wife] harmless." A dispute subsequently arose when the wife sought reimbursement from the husband for her 2010 K-1 tax liability. The trial court resolved the issue in favor of the wife. The husband appealed to the Fourth Appellate District.

{¶ 46} Similar to Husband's arguments, the husband in *Enyart* argued that (1) he was not responsible for the wife's 2010 K-1 tax liability because such was the wife's personal debt, and not a debt of the corporation, as profits of an S corporation are taxed as personal income to the shareholders, and (2) the trial court improperly modified the parties' settlement agreement when it held the husband responsible for the K-1 tax liability because tax liabilities were neither discussed during settlement nor included in the divorce decree.

{¶ 47} Upon applying the law regarding the structure of an S corporation for tax purposes, the Fourth Appellate District found that the divorce decree was ambiguous. The appellate court then held that the trial court did not err in holding the husband responsible for the wife's K-1 tax liability because it was consistent with the divorce decree and the long-standing practice of the corporation to pay the K-1 tax liability of its shareholders.

{¶ 48} In challenging the trial court's reliance on *Enyart*, Husband is correct that unlike in *Enyart*, there is no evidence Scrimizzi Properties ever paid the parties' K-1 tax liabilities either through a disbursement or another type of payment such as a payroll check. However, as stated above, the earnings of an S corporation, whether distributed or not, are not taxed at the corporate level but are taxed as personal income to the shareholders. *Giddens*, 2016 Ohio 8412 at ¶ 17-18. The taxable income of an S corporation is thus computed essentially as if the corporation were an individual. *Tetlak v. Bratenahl*, 92 Ohio St.3d 46, 49 (2001). Nevertheless, "it is still corporate income that is taxed[.] It is the corporation, not the shareholders, that elects not to be subject to the taxing of its income. The concept that the corporation earned its income is preserved." *Wilhelm*, 257 F.Supp. at

19-20.

{¶ 49} Although the Fourth Appellate District placed great emphasis upon the corporation's long-standing practice of paying its shareholders' K-1 tax liability, the appellate court further relied upon the general indebtedness provision of the divorce decree in rejecting the husband's argument that the decree unambiguously excluded the wife's K-1 tax liability from the debts allocated to the husband. This is relevant to the case at bar as that provision is similar to Article 3 of the Decree referring generally to that class of debts "associated with Scrimizzi Properties" as being Husband's responsibility. That is, the Decree need not refer specifically to the 2015 tax liability to allocate that liability between the parties. The trial court cited *Enyart* for the general proposition that the indebtedness provision of the divorce decree "made [the husband] the sole obligor for the corporation's tax debt. As a result, he was required to reimburse [the wife] for tax debt later discovered." We find no error in the trial court's partial reliance upon *Enyart* in overruling Husband's objection to the magistrate's July 3, 2018 decision.

{¶ 50} In his fourth issue for review, Husband argues the trial court erred in denying his Civ.R. 60(B) motion. Specifically, Husband argues the trial court erred in rejecting his claims of surprise and newly discovered evidence because the record shows Husband was "unaware and unsure of what, if any, additional tax debt may be owed" as a result of the Scrimizzi Properties' incorrect 2015 original tax return.

{¶ 51} The decision to grant or deny a Civ.R. 60(B) motion lies in the sound discretion of the trial court and will not be reversed on appeal absent an abuse of that discretion. *Cox v. Zimmerman*, 12th Dist. Clermont No. CA2011-03-022, 2012-Ohio-226, ¶ 14. To prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate that (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is

made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken. *GTE Automatic Electric, Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146 (1976), paragraph two of the syllabus. Failure to meet any one of these three factors is fatal, for all three must be satisfied in order to gain relief. *First Fin. Bank, N.A. v. Grimes*, 12th Dist. Butler No. CA2010-10-268, 2011-Ohio-3907, ¶ 14.

{¶ 52} We find the trial court did not abuse its discretion in denying Husband's Civ.R. 60(B) motion because Husband failed to show he was entitled to relief under Civ.R. 60(B)(1) and (2). While Husband did not know the actual amount owed regarding the 2015 tax liability until after the March 6, 2017 hearing, his testimony plainly shows he knew there was a potential and likely significant tax issue before the March 6, 2017 hearing. Specifically, Husband testified he received Duvall's email on February 16, 2017, which alerted him of a potential tax issue resulting from the Scrimizzi Properties' 2015 original tax return and which warned him of back taxes owed, as "the Scrimizzi Properties 2015 tax return will most likely have to be amended to reverse the original $100,000 loss and report an approximate $90,000 tax income. Obviously back taxes will be due." The testimony further indicates that in response to Duvall's email, Husband talked to Clawson about the email, met with Duvall, and received an email from Wulff and Associates regarding the tax liability between February 16, 2017, and February 27, 2017. The trial court, therefore, properly rejected Husband's claims of surprise and newly discovered evidence.

{¶ 53} Furthermore, as Husband knew there was a potential tax issue resulting from the Scrimizzi Properties' 2015 original tax return before the March 6, 2017 hearing, he could have excepted the 2015 tax liability from the parties' agreement, conditioned the agreement upon settlement of the potential tax liability, or moved to continue the March 6, 2017 hearing to further investigate the potential tax issue and the amount ultimately owed. However,

Husband failed to take any of these actions and instead proceeded with the parties' agreement and settled the divorce. A party may not use a Civ.R. 60(B) motion as a substitute for a direct, timely appeal. *Tedrick v. Tedrick*, 12th Dist. Clermont No. CA2015-07-065, 2016-Ohio-1488, ¶ 25. Civ.R. 60(B) "does not exist to allow a party to obtain relief from his or her own choice to forgo an appeal from an adverse decision." *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, ¶ 15.

{¶ 54} Husband's second assignment of error is overruled.

{¶ 55} Judgment affirmed.

HENDRICKSON, P.J., and S. POWELL, J., concur.